AMOS H. WILLIAMS, *ET AL.*, PLAINTIFFS, v. THE TOWN-
SHIP OF CINNAMINSON IN THE COUNTY OF BURLING-
TON, *ET AL.*, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided December 18, 1961.

*Mr. James M. Davis, Jr.,* argued the cause for the plaintiffs (*Messrs. Powell & Davis,* attorneys).

*Mr. Robert W. Criscuolo* argued the cause for the defendants Township of Cinnaminson *et al.*

*Mr. David J. Goldberg,* Deputy Attorney General, argued the cause for the State of New Jersey (*Mr. David D. Furman,* Attorney General, attorney).

SCHALICK, J. S. C.  This is an action in lieu of prerogative writs brought by plaintiffs, taxpayers of Cinnaminson Township, seeking to test the constitutionality of chapter 192 of the *Laws of* 1960 and to have the court invalidate the ordinance of Cinnaminson Township creating The Cinnaminson Municipal Port Authority.

The Attorney General, on behalf of the State of New Jersey, was granted leave to intervene in this action as party defendant for the limited purpose of defending the "municipal port authorities law," *N. J. S. A.* 40:68A–29 *et seq.*

The parties agreed to submit the issues to the court on motions for summary judgment.

The Township of Cinnaminson, a municipality in Burlington County, has land frontage upon the Delaware

River and upon that portion of the Delaware River which is navigable. On February 16, 1961, chapter 192 of the *Laws of* 1960 was approved. *N. J. S. A.* 40:68A–29 *et seq.* This statute authorizes municipalities along or through which a navigable river flows to create a "municipal port authority" by ordinance, which ordinance could not take effect until a certified copy was forwarded to each "existing port body" existing by statute or compact within the district where the municipal authority existed, and such "port body" may by resolution filed with the municipal clerk within 20 days "object" to the ordinance, which objection would bar it from becoming effective.

The subject ordinance was adopted April 11, 1961, certified copy forwarded to the Delaware Port Authority, and the latter authority has not registered any objection.

"The municipal port authorities law" *N. J. S. A.* 40:68A–30 *et seq.,* sets forth a declaration of public interest and policy:

"It is hereby found that there exists a lack of adequate port facilities available for public use in municipalities in, along or through the territory of which a navigable river flows and it is hereby declared to be in the public interest and to be the policy of the State to foster and promote by all reasonable means the establishment and development of port facilities in municipalities in, along or through the territory of which a navigable river flows and thereby bettering the public health, welfare and convenience and increasing the availability of proper port facilities which cannot be adequately secured except by exercise of the powers of government. It is the purpose and object of this act to further and implement such policy by

(1) Authorizing municipalities in, along or through the territory of which a navigable river flows by means and through the agency of a municipal port authority, to acquire, construct, maintain, operate, improve or lease public port facilities;

(2) Authorizing the making of charges for the use or the services of such facilities, and providing for the establishment, collection and enforcement of such charges;

(3) Creating as bodies corporate and politic municipal port authorities to have full responsibility and powers with respect to such facilities and the establishment, collection, enforcement, use and disposition of such charges for the use or services of such facilities;

(4) Providing for the financing of such facilities, for the issuance of bonds therefor, and for the payment and security of such bonds; and

(5) Granting to municipalities in, along or through the territory of which a navigable river flows and to such municipal port authorities discretionary powers to provide for public port facilities or a system thereof and obtaining funds to defray the cost thereof from the users of such facilities or from counties or municipalities or from other persons contracting for or with respect to the same."

The statute authorizes the governing body by ordinance to create a municipal port authority, and after its adoption the procedure to be followed is specified, together with the remedies of interested parties:

N. J. S. A. 40:68A–32. "* * * A certified copy of each ordinance for the creation of the municipal port authority adopted pursuant to this section shall be forwarded also to each authority, board, commission or other public body (herein called the existing port body) existing or established to exercise powers for port purposes in a port district or other district or area, by or pursuant to act of Legislature of this State alone or in conjunction with the Legislature of another State, the district or area of operation of which includes in whole or in part the area of the port district created by virtue of adoption of such ordinance. After filing of the certified copies of each ordinance for the creation of a municipal port authority as aforesaid, such ordinance shall be published in a newspaper published or circulating in the port district together with a notice stating the fact and date of its adoption and the places where such ordinance has been so filed for public inspection and also the date of the first publication of such notice, and also that any action or proceeding of any kind or nature in any court questioning the validity of the creation or establishment of the municipal port authority shall be commenced within 20 days after the first publication of such notice. If no action or proceeding questioning the validity of the creation or establishment of the municipal port authority shall be commenced or instituted within 20 days after the first publication of such notice and if there shall not have been filed with the clerk of the governing body of the municipality creating the municipal port authority a certified copy of a resolution of any existing port body objecting to the creation or establishment of the municipal port authority within 20 days after the first publication of such notice then all residents and taxpayers and owners of property in the port district and each existing port body and all users of the port system and all other persons whatsoever shall be forever barred and foreclosed from instituting or commencing any action or proceeding in any court, or from pleading any defense to any action or proceeding, questioning

the validity of the creation or establishment of the municipal port authority and said municipal port authority shall be conclusively deemed to have been validly created and established and to be authorized to transact business and exercise powers as a municipal port authority pursuant to this act."

The plaintiffs procured a temporary restraint prior to the organization of the authority, after filing a complaint alleging an interstate compact between the States of New Jersey and Pennsylvania created the Delaware River Port Authority, *R. S.* 32:3–1 to 32:6–4, which was a contract between the two states, the obligations of which are violated and impaired by the action of the Township of Cinnaminson in attempting to create the Cinnaminson Township Port Authority. The Delaware River Port Authority "Port District" (under *N. J. S. A.* 32:3–13.23) "shall mean all the territory within the counties of Delaware and Philadelphia in Pennsylvania and all the territory within the counties of Atlantic, Burlington, Camden, Cape May, Cumberland, Gloucester, Ocean and Salem in New Jersey."

Article 1 of the compact includes these relevant provisions:

*N. J. S. A.* 32:3–2. "* * * (c) The improvement and development of the Port District for port purposes by or through the acquisition, construction, maintenance or operation of any and all projects for the improvement and development of the Port District for port purposes, or directly related thereto, either directly by purchase, lease or contract, or by lease or agreement with any other public or private body or corporation or in any other manner.

(d) Co-operation with all other bodies interested or concerned with, or affected by the promotion, development or use of the Delaware river and the Port District.

* * * * * * *

(g) The promotion as a highway of commerce of the Delaware river, and the promotion of increased passenger and freight commerce on the Delaware river and for such purpose the publication of literature and the adoption of any other means as may be deemed appropriate.

(h) To study and make recommendations to the proper authorities for the improvement of terminal, lighterage, wharfage, warehouse and other facilities necessary for the promotion of commerce on the Delaware river.

(i) Institution through its counsel, or such other counsel as it shall designate, or intervention in, any litigation involving rates,

preferences, rebates or other matters vital to the interest of the Port District; *provided,* that notice of any such institution of or intervention in litigation shall be given promptly to the Attorney General of the Commonwealth of Pennsylvania and to the Attorney General of the State of New Jersey, and provision for such notices shall be made in a resolution authorizing any such intervention or litigation and shall be incorporated in the minutes of the commission.

\*         \*         \*         \*         \*         \*         \*         \*

(k) The performance of such other functions which may be of mutual benefit to the Commonwealth of Pennsylvania and the State of New Jersey insofar as concerns the promotion and development of the Port District for port purposes and the use of its facilities by commercial vessels."

Notation should be made of *R. S.* 32:3–10 which includes a covenant between the states that they "will not authorize or permit the authorization of the construction, operation or maintenance of any additional vehicular bridge or tunnel, \*  \*  \* over or under the Delaware River, by any other person or body than the commission within a distance of ten miles in either direction from the said bridge."

Both of the authority statutes include the grant of powers common to the many authority statutes which now are a part of our statute law.

The question to be decided resolves itself in the determination whether the Delaware River Port Authority has exclusive jurisdiction in the creation of port facilities within the counties named, including Burlington County of which Cinnaminson Township is a part, and whether other municipal port authorities can be established which would act independently of the compact-created port authority.

The plaintiffs find in the authorization of a municipal port authority a conflict with the compact authority, without any additional proofs of such a conflict, and arrive at the conclusion that they cannot live together.

Agencies and authorities which supplement each other in accomplishing the desired purposes of each are not new to our law. Oftimes the grant of exclusive rights would neither be desirable nor practical. The compact authority port district embraces all of the eight counties in Southern New

Jersey bordering on the Delaware River or the Atlantic Ocean. Within the span of the authorized statutory powers granted to the authority the extent of the area is necessary to meet the functional demands. To grant to that authority exclusive jurisdiction, some expressed legislative intent must be found or some insurmountable situation must exist which would negate the right of the Legislature to authorize other authorities to act in such a vast area in reference to such general needs for the protection of the public interest.

The compact authority act, when read in its entirety, neither provides for exclusive control of port facilities nor is there any meaning to be gathered from it that there was such an intention. In fact the opposite is true. Reference is made to the requirement of the authority for "co-operation with all other bodies interested or concerned with or affected by the promotion, development or use of the Delaware river and the Port District." *N. J. S. A.* 32:3–2(d). There was an expressed limitation as to the erection of additional bridges "by any other person or body than the Commission," *R. S.* 32:3–10, but no such limitation as to port facilities. The language of the cited sections in *N. J. S. A.* 32:3–2 warrants the reasonable interpretation that other authorities would be acting in the same field.

In the case of *State v. Murphy,* 36 *N. J.* 172 (1961), Chief Justice Weintraub, in referring to the Waterfront Commission of New York Harbor as a commission created by the States of New York and New Jersey, stated:

"As the compact expressly states, the Commission is 'a body corporate and politic, an instrumentality of the States of New York and New Jersey.' *R. S.* 32:23–7. The Commission is the agent of each state and of both of them, see *Helvering v. Gerhardt,* 304 *U. S.* 405, 58 *S. Ct.* 969, 82 *L. Ed.* 1427 (1938), and exercises a portion of the police power delegated by the states which created it, *Hazelton v. Murray,* 21 *N. J.* 115, 119 (1956), and cases there cited.

The Commission is not a separate level of government somewhere between the federal government and the contracting states. It is part of the government of each of the states."

In the case at hand, New Jersey and Pennsylvania designated the authority as the agent of each state for the purposes enumerated, but there is no foundation for the conclusion that New Jersey did not have the power to grant to a municipality the right to create a municipal port authority to give fuller effect to similar needs within the State.

The Attorney General reviewed other authorities now functioning in the subject area. The South Jersey Port District was created by the Legislature in 1926, 25 years before the compact with Pennsylvania, and its territory embraces "the counties of Mercer, Burlington, Camden, Gloucester, Salem, Cumberland and Cape May, and all the lands and waters in the Delaware river contiguous thereto," *R. S.* 12:11–1 *et seq.* The South Jersey Port Commission operates in the City of Camden, which is a part of the compact area, and no reference was made to it in the compact statute.

In 1952, one year after the Delaware River Port Authority was created, the same states, New Jersey and Pennsylvania, authorized a supplemental agreement between the states in reference to the Delaware River Joint Toll Bridge Commission and granted added powers, to include the right "(q) To acquire, construct, rehabilitate, improve, maintain, lease as lessor or as lessee, repair and operate port and terminal facilities as hereinafter defined within the district * * *." *N. J. S. A.* 32:8–3(q). This district includes part of Burlington County. *N. J. S. A.* 32:8–2(e).

In 1961 the Legislature authorized the creation of the "Delaware River and Bay Authority." *N. J. S. A.* 32:11E–1 *et seq.* This compact would be between New Jersey and Delaware, and its purposes include "The planning, financing, development, construction, purchase, lease, maintenance, improvement and operation of any transportation or terminal facility within those areas of both States which border on or are adjacent to the Delaware river or bay south of the aforesaid line * * *." This district would include Salem, Cumberland and Cape May Counties, which counties are also in the Delaware Port Authority.

The several legislative enactments since 1925 to the present time furnish a comprehensive view of the legislative approach to these problems as they become more numerous. If it were intended that one authority should exclude the right of the other to act in a specific area, it would be so stated. To read in the statute a meaning which is not there would result in an illogical interpretation. Considering the practical operations by the authorities under these statutes, which the court should consider in interpreting them, the only reasonable conclusion is that each authority may accomplish the purposes for which it is created without excluding the other from the area, absent any proof showing a conflict.

The courts adopt the fundamental rule that there is a presumption in favor of the constitutionality of a legislative enactment, and the burden is on him who challenges the statute. "The finding of the Legislature is presumed to have the support of facts known to it 'unless facts judicially known or proved preclude that possibility'; * * *. Every intendment is indulged in favor of the validity of the act." *Jamouneau v. Harner*, 16 N. J. 500 (1954).

The plaintiffs have failed to show that the compact statute prohibits the New Jersey Legislature from authorizing another port authority which can coexist with the compact authority. In the light of the statutory right of the "existing port body" to register an objection by acting within 20 days, or otherwise be "forever barred and foreclosed," it must be presumed that the compact authority finds no conflict between itself and the municipal authority, and that coexistence is not undesirable. Service of the ordinance on the "existing port body" with no resulting answer was proved.

It is admitted that a municipality or an individual could develop properties owned by either for port facilities. Also, the Legislature had the power to authorize an agency to do it. It logically follows that the Legislature can empower a municipality to create a municipal authority to act. See

*Camden v. South Jersey Port Commission,* 2 *N. J. Super.* 278 (*Ch. Div.* 1948).

█ The defendants question the right of the plaintiffs to maintain the suit, for the reason that the plaintiffs found their contentions of the unconstitutionality of the statute on the impairment of the obligations of the State of New Jersey to the Commonwealth of Pennsylvania and that no one can obtain a decision as to the invalidity of a law on the ground that it impairs the rights of others. The creation of a municipal port authority by the defendant Township of Cinnaminson under the ordinance brings into question the right of the plaintiffs as taxpayers to test the statute and the ordinance. Reference is made in the statute to the limitation of actions which must be brought "within 20 days after the first publication of such notice," otherwise "all residents and taxpayers and owners of property in the port district * * * shall be forever barred and foreclosed from instituting or commencing any action or proceeding in any court."

"In our State, perhaps more than any other, the prerogative writ has been broadly made available as a comprehensive safeguard against wrongful official action." *Walker v. Stanhope,* 23 *N. J.* 657, 661 (1957). "It takes but slight private interest, added to and harmonizing with the general public interest * * *." *Hudson Bergen, etc., Assn. v. Hoboken,* 135 *N. J. L.* 502, 510 (*E. & A.* 1947). See *Doremus v. Board of Education of Borough of Hawthorne,* 5 *N. J.* 435 (1950).

The plaintiff taxpayers have a private interest which coincides with a strong public interest sufficient to establish their standing to procure a judicial determination of the constitutionality of the statute and the validity of the ordinance. Their right to bring such an action finds support in the cited provision of the statute. This case should be decided on its merits.

█ The court finds that the presumption that "the municipal port authorities law," *N. J. S. A.* 40:68A–30, is constitutional, was not overcome, and so concludes that the

statute is constitutional and the ordinance valid. The restraint is discontinued and judgment is entered for the defendants on their motion for summary judgment, without costs.