CASES IN CHANCERY, 1917.   ·   397

87 *N. J. Eq.*     Trenton & Mercer Co. Traction Co. *v.* Ewing.

TRENTON AND MERCER COUNTY TRACTION CORPORATION, and TRENTON, PENNINGTON AND HOPEWELL STREET RAILWAY COMPANY

*v.*

THE INHABITANTS OF THE TOWNSHIP OF EWING et al.

[Decided August 10th, 1917.]

1. Municipal corporations are not, as respects public rights, within statutes of limitations, but, the principle of an estoppel *in pais* is applicable in exceptional cases, empowering the court to decide the question, not on the mere lapse of time, but upon all the circumstances of the case, and to hold the public estopped or not, as right and justice may require.

2. A street railway company, having obtained permission to construct, maintain and operate a street railway upon a township road, by ordinances of the township committee and county board of freeholders, in accordance with a map of its proposed route designating certain turnouts at given points, in constructing its railroad changed the location of one of its turn-outs from the point designated on the map to another point a considerable distance away, where, however, its location could have been authorized originally: the railroad and turn-out, thus constructed, were maintained and operated for twelve years without any protest from the municipalities, or the landowner in front of whose property the turn-out was constructed, the present owner having acquired the property after the turn-out had been installed for ten years, having had actual notice of its location and operation when he purchased and went into possession of the premises.—*Held*, that the municipalities, both of which ordered the removal of the turn-out, one of which (the township) directed its agent actually to remove it, and that agent, should be perpetually enjoined from removing the turn-out from its present location; no injunction to go against the individual landowner, who never threatened to remove the turn-out, has no intention of doing so, and only urged upon the municipalities that they take proper steps to remove it.

On final hearing on pleadings and proofs.

*Mr. Edward M. Hunt* and *Mr. George W. Macpherson,* for the complainants.

*Mr. Willis P. Bainbridge,* for the township of Ewing and Alwyn A. Temple, defendants.

*Mr. Samuel C. Kulp,* for the board of chosen freeholders of the county of Mercer, defendant.

*Messrs. James & Malcolm G. Buchanan,* for defendant Arthur S. Kniffin and the other defendants.

WALKER, CHANCELLOR.

On November 1st, 1902, the township of Ewing, in the county of Mercer, passed an ordinance granting to the Trenton, Pennington and Hopewell Street Railway Company, one of the complainants, permission and right to construct, maintain and operate a street railway upon the Pennington road in that township, and at or about the same time the board of chosen freeholders of the county of Mercer also passed an ordinance granting permission to the railway company named to construct its railway along the Pennington road in the township of Ewing. These ordinances provided that the railroad should consist of a single track, with three turn-outs in the township of Ewing, as shown upon the map of its proposed route. The purpose of the turn-outs, or switches as they are otherwise called, was to enable cars to pass each other on the track while going in opposite directions. By the passage of the two ordinances mentioned the statutory right of the company to construct the railroad became complete, and subsequently, in the year 1903, the company constructed its railroad over the route granted, with three turn-outs, or switches, in the township of Ewing, one of which was, and is, known as "Green's switch," the one in question in this suit, which, however, was not built at the point shown on the map but at a distance of some one thousand and seven hundred feet therefrom.

On or about October 15th, 1910, the Trenton, Pennington and Hopewell Street Railway Company leased its railroad and appurtenances, including its rights under the ordinances mentioned, to the Trenton and Mercer County Traction Corporation, the other complainant.

In the year 1915 the Ewing township committee and the freeholders of Mercer notified the complainants to remove this

switch, and, the demand not being complied with, the township committee ordered its agent, the defendant Alwyn A. Temple, to make the removal. This resulted from complaint and request emanating from Dr. Arthur S. Kniffin, the owner of the land in front of which the switch is located.

Dr. Kniffin in his affidavit says that his house on the Pennington road is immediately opposite Green's switch; that he has lived there for nearly three years, and that the switch is an inconvenience to him; that he never had any intention, nor has he any intention, of personally removing the switch or causing it to be removed, nor has he ever threatened to do so, but has urged upon the board of freeholders and the township committee that they take proper legal steps to have it removed. He says in his answer that on or about August 1st, 1915, he first learned that Green's switch was illegally constructed and maintained, that is without authority for construction and maintenance opposite the dwelling into which he moved a few years ago, which was ten years after the switch had been constructed; it having been built some twelve years before proceedings were taken looking to its removal.

Very full affidavits were submitted on both sides and the cause was fully argued on the hearing of the motion for a preliminary injunction, and I asked the parties if they were willing to submit the matter as on final hearing, but this was not assented to; therefore, the matter was disposed of on motion for interlocutory injunction, which was granted.

After stating the facts substantially as above set forth, I said in my memorandum granting the preliminary injunction:

"Given a switch or turn-out which existed in a locality for twelve years without protest from either the owner of abutting land or the proper authorities, and it follows that the *status* should be preserved *pendente lite,* especially as it is not shown that any decided inconvenience to the public or the landowner will occur *ad interim."*

After the granting of the interlocutory injunction the parties consented that I should decide the question as on final hearing, on the pleadings, depositions and exhibits submitted.

After a careful review of the whole case my opinion now is that the complainants are entitled to have the *status* preserved perpetually. No inconvenience whatever to the public will result from it, and very little, if any, to the landowner in front of whose property the turn-out was laid in 1903, and has since been maintained; and especially should the injunction go, as the defendant Dr. Kniffin did not own the premises at the time of the turn-out's construction, but acquired the property about ten years afterwards with the turn-out in front of it.

Although the turn-out, or switch, is not located at the point shown upon the map of the railway line and designated by the ordinances granting permission for the laying of the tracks, and if it had been built at the point designated by the ordinance and map it would not be in front of the property so long afterward acquired by the defendant Dr. Kniffin, I am of opinion that the defendants, or any one of them, are not entitled to insist upon its removal.

That this court has power to enjoin the removal, by a municipal corporation, of tracks of a street railway company, in a proper case, has been decided in *Asbury Park and Sea Girt Railway Co.* v. *Neptune Township, 73 N. J. Eq. 323; affirmed S. C., 75 N. J. Eq. 562.* The question is: Is this a proper case? I think it is.

Although consent to the building of the road with the turn-outs shown on the map was legally granted, the defendants contend that the turn-out in question, not being located at the point designated on the map, consequently was not authorized by the ordinances, and that ratification of the location of the turn-out, if any, was given informally and not by the proper municipal authorities in meeting assembled for that purpose; and they rely largely upon *West Jersey Traction Co.* v. *Camden Horse Railway Co., 53 N. J. Eq. 163,* wherein it was held that where a statute requires consent by a township committee to legalize the laying of a street railroad, it is necessary that the consent should be given when the members of the committee, or a majority of them, are assembled in corporate meeting, and that the declarations of individual members are not legal evidence to prove acts of the corporate body, nor is the public estopped by such declarations. That case, however, was one in which an injunction was

CASES IN CHANCERY, 1917. 401

87 *N. J. Eq.* · Trenton & Mercer Co. Traction Co. *v.* Ewing.

sought to restrain the alleged improper building of a line of railroad in the first instance; and the doctrine of estoppel against a municipal corporation which had for at least twelve years acquiesced in an actual location of a railroad turn-out, which it could have authorized in the first instance, was not presented. That estoppel obtains against an individual defendant in such case I think undoubted.

In *O'Leary* v. *Street Railway Co., 87 Kan. 22,* it was held by the supreme court of Kansas that the city of Kansas City should be estopped from questioning the legality of certain completed changes in one of its streets, made by a street railway company under color of ordinances of the city, although such changes were not warranted by the ordinance, but which were to be considered as having been lawfully made, the city having had power in the first instance to authorize them, and that the abutting property owner should not be allowed damages on the theory that the work was unlawful and created a nuisance. The court observed (at *p. 30*), quoting from *Bridgewater Borough* v. *Traction Co., 214 Pa. St. 343:*

"Where a street railway company in laying its track on a borough street has slightly deflected from the line for the track established by the borough and the borough has acquiesced in this location of the track for ten years, it will be presumed to have ratified the deflected line, and if the railway company in reconstructing its track lays it upon the deflected line, the borough has no standing to object."

The situation before me is quite similar to that in Bridgewater Borough *v.* Traction Co., quoted in O'Leary *v.* Street Railway Co. There a street railway company laid its tracks, not on the line established by the municipality, but on one deflected therefrom. Here, the railway company has constructed a switch, not at the point located by the ordinance and map, but at some distance therefrom. There is no practical difference, at least none in principle, in deflecting the tracks of a street railway from a line established by municipal authority, and in building a turn-out at an authorized point but at one somewhat removed therefrom. It is not upon the doctrine of adverse possession, but upon that of estoppel *in pais* that the municipality and

the private owner should now, under all the circumstances of the case, be enjoined from removing the turn-out from the location where it was maintained for twelve years without protest from the municipality or the landowner, the present landowner having acquired his property after the switch had been installed for ten years, and who, therefore, had actual notice of its location and operation at the time that he purchased and went into possession of the premises in front of which the turn-out is laid. : · Judge Dillon, in his work on municipal corporations (*5th ed. vol. 3 p. 1900* § *1194*), treating of adverse possession of streets and highways, states his view and suggestions as to the true doctrine as follows:

"Upon consideration, it will perhaps appear that the following view is correct: Municipal corporations, as we have seen, are regarded as having, in some respects, a double character—one public and the other (by way of distinction) private. As respects property not held for public use, or upon public trusts, and as respects contracts and rights of a private nature, there is no reason why such corporations should not fall within limitation statutes, and be affected by them *unless excluded* from them. For example, in an action on contract or for tort, a municipal corporation may plead or have pleaded against it the statute of limitations. But such a corporation does not own and cannot alien public streets or places, and no mere laches on its part or on that of its officers can defeat the right of the public thereto; yet there may grow up, in consequence, *private rights of more persuasive force in the particular case* than those of the public. It will perhaps be found that cases sometimes arise of such a character that justice requires that an equitable estoppel shall be asserted even against the public, but if so, such cases will form a law unto themselves, and do not fall within the legal operation of limitation enactments. The author cannot assent to the doctrine that, *as respects public rights, municipal corporations are impliedly within ordinary limitation statutes.* It is unsafe to recognize such a principle. But there is no danger in recognizing the principle of an estoppel *in pais,* since this leaves the courts to decide the question, not by the mere lapse of time, but upon all the circumstances of the case to hold the public estopped or not, as right and justice may require."

This same doctrine of equitable estoppel against the public arising out of matter *in pais* was asserted by me, when vice-chancellor, in *Mason* v. *Ross, 75 N. J. Eq. 136, 143; reversed S. C., 77 N. J. Eq. 527,* but upon other grounds.

The views above expressed lead to the conclusion that the defendant municipalities, both of which ordered the removal of

the turn-out, one of which (the township) directed its agent actually to remove it, and that the agent, should be perpetually enjoined from removing the turn-out from its present location; no injunction to go against the individual landowner, who never threatened to remove the turn-out, has no intention of doing so, and only urged upon the municipalities that they take proper steps to remove it. The only award of costs to be made *inter partes* will be in favor of the complainants against the defendant municipalities.