TRENTON AND MERCER COUNTY TRACTION CORPORATION and TRENTON, PENNINGTON AND HOPEWELL STREET RAILWAY COMPANY, complainant-respondent,

*v.*

INHABITANTS OF TOWNSHIP OF EWING et al., defendants-appellants.

[Submitted March term, 1919.   Decided June 15th, 1919.].

1. Where a municipality was required by law to consent to the location of a street railway by ordinance "and not otherwise," and did so consent by ordinance, but the street railway located a switch on the public highway at a place not authorized by the ordinance, twelve years' acquiescence by the municipal authorities will not constitute an estoppel as against the public.

2. The public authorities are not barred by laches in such a case.

3. Where a railroad switch was constructed upon the public highway without right, the nuisance may be abated by the municipality.

On appeal from a decree of the chancellor reported in *87 N. J. Eq. 397*.

*Mr. George W. Macpherson* and *Mr. Frank Bergen,* for the complainant-respondent.

*Mr. Malcolm G. Buchanan,* for the defendants-appellants.

The opinion of the court of delivered by

SWAYZE, J.

The chancellor enjoined the township committee and the board of freeholders from removing a turnout known as Green's switch from its location in a county road, and the township of Ewing and the freeholders of Mercer appeal. The rights of the street railway company rest on an ordinance of the township, of November 1st, 1902, consenting to the construction of the railway and fixing the location of the tracks. A map showing the location of tracks and switches accompanied the ordinance. The street railway company executed an agreement in accordance with the statute, by which it accepted the ordinance and all its provisions and covenanted with the township that the railway company and its successors should be bound to observe, keep, and perform all the conditions, limitations, impositions, matters and things by the ordinance directed to be observed, kept and performed as a consideration to the enjoyment of the rights, privileges, franchises and licenses granted by the ordinance. The agreement added that it was the express intention to be bound by all the restrictions, limitations, and conditions of the ordinance. The railway was built in 1903; Green's switch was not located at the point indicated on the map, but one thousand seven hundred feet away. No question arose until 1915, when the township and county authorities moved to take up the switch, and the present bill was filed. The bill sets forth the ordinance and agreement, but obviously these averments would not entitle the complainant to relief, since they failed to aver and could not prove that the switch was constructed at the point fixed. The bill charges that the railway was constructed by virtue of the ordinance "or other valid authority." What that other valid authority was appears only in the answering affidavits. In those the claim is made that the township committee and the board of freeholders assented to the actual location of the switch. This assent seems to have been merely by individual committeemen and freeholders, perhaps while the building of the road was in progress, perhaps at a tour of in-

spection after completion. No formal action is even claimed to have been taken; two of the three committeemen, all now living, deny any consent to the change of location on their part or as far as they know on the part of their colleague, and the evidence of such consent is most meagre and unsatisfactory. At best, it is no more than failure to object on the part of committeemen and freeholders and it is not shown that they knew that the actual location was different from that prescribed by the ordinance. In the absence of proof, we cannot hold that they are to be charged with knowledge that a shift of one thousand seven hundred feet in the location had been made. A survey was necessary to reveal the fact. But even if they had known it, formal action was necessary, and in view of the statutory requirement that the clerk shall keep a record of the committee's proceedings (*Comp. Stat. p. 5577, placitum 14*), the case is within the rule of *West Jersey Traction Co.* v. *Camden Horse Railroad Co., 53 N. J. Eq. 163, 167.* In the absence of proof of any resolution by the township committee, we must assume there is none, and that is conceded to be the fact.

The complainant relies really upon the failure of the public authorities to object or to act for twelve years. Whether he chooses to use the term "estoppel" or "laches" is of no importance. The elements of an estoppel are not present since there is no proof that the railway company was induced to place the switch where it did by anything said or done, even by individual members of the committee, although that would not raise an estoppel against the public. The municipality in granting the consent originally could act only by ordinance "and not otherwise" as the statute is careful to say. *Comp. Stat. p. 5040.* This clearly forbids action by way of estoppel, which, if permitted, would nullify the statutory prohibition. It is, moreover, conclusive against the company that it did in fact act under an ordinance which fixed the location of the switch at a different point from the actual location. The company did not waive its right to maintain the legal switch. It contracted in solemn form to comply with the ordinance. If it has a right to maintain the present switch, it has a right to maintain four switches

instead of three, as the ordinance says. Clearly no such claim is admissible and the result necessarily follows that the switch now in question is illegal. The estoppel claimed by the company applies to an original location of track, and this is required by the statute to be by ordinance "and not otherwise." A subsequent change of location might be authorized by resolution, and there is no exclusion of other methods by express language; but if we assume that a subsequent change might be legalized by way of estoppel, that will not avail the street railway company, which does not claim that there was any such subsequent change of location as might be authorized by resolution.

There remains only the suggestion that the public authorities are barred by laches. The law is settled to the contrary. *Cross* v. *Morristown, 18 N. J. Eq. 305; Hoboken Land and Improvement Co.* v. *Mayor, &c., of Hoboken, 36 N. J. Law 540; Price* v. *Plainfield, 40 N. J. Law 608; Laing* v. *United New Jersey Railroad, &c., Co., 54 N. J. Law 576, 578; Jersey City* v. *Hall, 79 N. J. Law 559.*

The switch was constructed in the public highway without right and the municipalities were within their rights in abating the nuisance. It is of no importance that both parties were acting to the same end.

The decree must be reversed and the record remitted to the end that the bill may be dismissed. The defendants are entitled to costs in both courts.

*For affirmance*—BERGEN, BLACK, WHITE, WILLIAMS—4.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, MINTON, KALISCH, HEPPENHEIMER, TAYLOR, GARDNER—9.