CUMBERLAND COUNTY WELFARE BOARD, PLAINTIFF, v. CHARLES ROBERTS AND MARY ROBERTS, HIS WIFE; ERNEST FLEMING, JR., AND SANDRA FLEMING, HIS WIFE; LUISA CHINI, A WIDOW; AND VINELAND SAVINGS & LOAN ASSOCIATION, DEFENDANTS.

Cumberland County Court
Law Division

January 23, 1976.

*Mr. Robert E. Bailey* for plaintiff.

*Mr. Gerald J. Batt* for defendants Ernest Fleming, Jr. and Sandra Fleming, his wife (*Messrs. Lipman, Antonelli, Batt & Dunlap,* attorneys).

*Mr. Newton Greenblatt* for defendant Luisa Chini (*Messrs. Greenblatt & Greenblatt,* attorneys).

*Mr. Richard Milstead* for defendant Vineland Savings & Loan Association (*Messrs. Milstead & Ridgway,* attorneys).

MILLER, J. C. C. Does the lien of a county welfare board under *N. J. S. A.* 44:7–15, which is more than 20 years old and unrevived, remain a valid lien on real estate because the lienholder is a governmental agency? This case arises out of a motion by the Cumberland County Welfare Board for a writ of execution in such a situation.

This case involves questions concerning the issues of governmental immunity, security of land titles and public policy. It appears there are no reported cases which adequately address the problems being litigated.

Charles Roberts and his wife Mary were recipients of the welfare board under the Old Age Assistance Program, *N. J. S. A.* 44:7–1 *et seq.,* from June 1, 1936 to May 1, 1937, and from December 1, 1944 to August 16, 1945. Pursuant

to the requirements for receiving assistance, the Roberts on two different occasions signed certificates to reimburse. The first was properly recorded January 21, 1937, and a certificate of assistance granted was recorded February 1, 1945. A second certificate to reimburse, dated March 29, 1937, was likewise properly recorded June 1, 1937, and a certificate of assistance granted was recorded August 31, 1945.

Charles Roberts died in 1944. Elizabeth Roberts, daughter of Mary Roberts, received the property upon the death of her mother in 1948.

On May 29, 1953 Elizabeth Roberts subdivided and conveyed a portion of the property in question to defendant Chini a surviving tenant by the entirety.

Elizabeth Roberts died August 12, 1971. On October 21, 1971 George Roberts, executor of the estate of Elizabeth Roberts, conveyed to the Flemings the remaining parcel of property. Vineland Savings and Loan Association is the mortgagee of the Flemings.

The lien which the board desires to enforce is created by *N. J. S. A.* 44:7–15 which states:

At any time the county welfare board may execute and file with the county clerk . . . a certificate * * * showing the amount of assistance advanced to said person, and when so filed each certificate shall be a legal claim against both the recipient and his spouse *with the same force and effect as a judgment* of the County Court, law division. [Emphasis supplied]

The above language is unequivocal. The inescapable conclusion is that the Legislature invested the board with a lien having all the attributes, benefits and obligations of a judgment holder in an action at law. If the Legislature had wished to create conditions or preferences on this lien, it would have expressly done so. Nowhere does *N. J. S. A.* 44:7–15 indicate the efficacy of the board's claim should rise or fall below that of any other judgment. Accordingly, the resolution of this case should be decided upon the law of judgments.

*N. J. S. A.* 2A:17–17 provides that "all real estate shall be liable to be levied upon and sold by executions to be issued on judgments obtained in any court of record in this state." The prescriptive period for the bringing of an action on a judgment is 20 years. *N. J. S. A.* 2A:14–5. Such judgment may be revived for an additional period of 20 years provided a proper proceeding or action of law is brought within 20 years of its entry. *Id.* Nowhere has the Legislature specified the provisions of *N. J. S. A.* 2A:17–17 and *N. J. S. A.* 2A:14–5 are or are not applicable to any special class of suitors.

The board advances the proposition that the statute of limitations does not run against the state, arguing that for this reason, therefore, welfare liens are exempt from the 20-year prescriptive period contained in *N. J. S. A.* 2A:14–5. *Trustees, etc., Public Schools v. Ott & Brewer Co.,* 135 *N. J. Eq.* 174 (Ch. 1944). The idea that governments are immune from the operation of such defenses as the statute of limitations, estoppel or laches, is a vestige of the feudal notion that the king could do no wrong and held prerogatives not afforded his subjects. In modern times this concept appears to rest upon the desire to protect the public treasury from the loss resulting from the neglect of public employees. *Eureka Printing Co. v. Div., etc., Dept. of Labor and Industry,* 21 *N. J.* 383, 387 (1956). However, the Supreme Court in *Eureka* observed:

There would seem to be nothing to prevent the federal and state governments from forthrightly providing that claims by them or their governmental divisions shall be barred if not pursued within a stated period of time. See *United States v. Lindsay,* 346 *U. S.* 568, 74 *S. Ct.* 287, 98 *L. Ed.* 300 (1953) ; *State v. Owen,* 23 *N. J. Misc.* 123, 130 (Sup. Ct. 1945). Such action fairly affords repose to those concerned and also tends to serve the public interest by stimulating the expeditious assertion of public claims; it should not meet with resistance in the form of narrow judicial construction. [at 388]

Modern and more just views reflect the thought that the state as a suitor in its own courts ought not to stand on any

different footing than one of its citizens. *McLaughlin v. Millville,* 110 *N. J. Super.* 200, 210 (Law Div. 1970) ; *Gitomer v. United States Cas. Co.,* 140 *N. J. Eq.* 531, 536 (Ch. Div. 1947) ; *Trustees of Internal Improv. Fund v. Claughton,* 86 *So.* 2d 775 (Fla. Sup. Ct. 1956) ; *People ex rel. Prindable v. New York Cent. R. Co.,* 400 *Ill.* 507, 81 *N. E.* 2d 201 (Sup. Ct. 1948) ; *Winter Haven v. State,* 125 *Fla.* 392, 170 *So.* 100 (Sup. Ct. 1936) *Quincy v. Sturhahn,* 18 *Ill.* 2d 604, 165 *N. E.* 2d 271 (Sup. Ct. 1960) ; *State ex rel. Atty. Gen. v. Janesville Water Co.,* 92 *Wis.* 496, 66 *N. W.* 512 (Sup. Ct. 1896). See 28 *Am. Jur.* 2d, Estoppel and Waiver, § 123.

It is useless to proudly proclaim that the wind and rain may enter where the king cannot go if the king can sue in his own courts and so gain entry *merely because he is king.*

■ The board's claim, which ripened into a "judgment" when the agreement to reimburse was filed, is not derived from any concept known at common law. The "judgment" is strictly statutory. It springs from and is measured by a legislative pronouncement. If the Legislature wished to exempt this "judgment" from the effect of the statute of limitations, it could have done so. Instead, by all reasonable implication the Legislature directed. that a welfare board's "judgment" be treated no better or worse than all other judgments. To make its "judgment" on the property of a recipient of old age assistance survive the 20-year limitation period the Legislature in *N. J. S. A.* 44:7–15 might have done so expressly and this it has not done. Neither plaintiff nor a court can extend or lessen the limitation period in *N. J. S. A.* 44:7–14.

■ The board could have at any time within 20 years revived its "judgment" without great expense or hardship. A determination adverse to the defendants herein would greatly prejudice the stability of titles and ownership of property.

Our system of land recordation, with its consequential constructive notice principle, is the linchpin of land conveyancing and has been so since the Revolution. 13A *N. J.*

*Practice* (*Lieberman Abstracts and Titles*) (3 ed.), § 1581 at 103 (1966). The entire complex of our land (as opposed to monied) economy is bottomed upon the ability of the title searcher to ascertain the present state of the record title. *Id.,* § 1582 at 105 *et seq.* Under such system the title searcher examines the indices to judgment records for a period of 20 years back from the day of the search. *Id.,* § 1649 at 160, 4 *American Law of Property,* § 17.19. at 594 (1952). (In practice it is the custom to go back 20 years and one day to be safe.)

To engraft exceptions upon this long established system is to destroy it, since its prime contribution is certainty. To do so because of the feudal prerogatives of Charles I is repugnant to justice and fair dealing, resembling government's "ignoble part" decried by Mr. Justice Holmes nearly 50 years ago. *Olmstead v. United States,* 277 *U. S.* 438, 470, 48 *S. Ct.* 564, 72 *L. Ed.* 944 (1928).

The motion of the board for a writ of execution is denied since the "judgment" is no longer a valid lien upon realty.