188 N.J. Super. 288 (1982)
457 A.2d 83
BOARD OF TRUSTEES OF BERGEN COMMUNITY COLLEGE, PLAINTIFF,
v.
J.P. FYFE, INC., JOHN DELAGE, THE CELOTEX CORPORATION, GAF CORPORATION AND COMMERCIAL UNION INSURANCE COMPANY, DEFENDANTS. GAF CORPORATION AND COMMERCIAL UNION INSURANCE COMPANY, DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
GLENWAL CONSTRUCTION COMPANY, FRANK GRAD & SON, THE UPJOHN COMPANY AND JOHN DOE, A FICTITIOUS NAME, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Law Division Bergen County.
Argued July 16, 1982.
Decided October 7, 1982.
*289 Rosen, Gelman & Weiss, for plaintiff Board of Trustees of Bergen Community College (William C. Slattery and Jill H. Haley, of counsel).
Bright & Zirulnik, for defendants J.P. Fyfe, Inc. and John Delage (Edward J. Nesselquist, of counsel).
Milton, Keane & Brady, for defendant The Celotex Corporation (Thomas J. Brady, of counsel).
Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney, for defendants and third-party plaintiffs GAF Corporation and Commercial Union Insurance Company (Bart J. Klein, of counsel).
Shannon Zachary Taylor, for third-party defendant Glenwal Construction Company.
Morton Stavis, for third-party defendant Frank Grad & Son (Neil Mullin, of counsel).
Lum, Biunno & Tompkins, for third-party defendant The Upjohn Company (Dennis J. Drasco, of counsel).
*290 YANOFF, J.S.C. (retired, on recall).
By cross-motions for summary judgment the parties raise issues which may completely determine this litigation. The precise issues are whether the doctrine of nullum tempus occurrit regi ("time [the Statute of Limitations] does not run against the king") is applicable to a county college, and which statute of limitations controls.
Plaintiff is a county college organized under N.J.S.A. 18A:64A-1 et seq. The statute provides that it may sue and be sued. N.J.S.A. 18A:64A-12 c. Such colleges are entities independent of county government. Mercer Cty. Commun. College Trustees v. Sypek, 160 N.J. Super. 452 (App.Div. 1978), certif. den. 78 N.J. 327 (1978).
Under date of July 9, 1969 plaintiff entered into a contract with Glenwal Construction Company under which Glenwal agreed as general contractor to build the Bergen Community College buildings. Glenwal engaged J.P. Fyfe, Inc. to construct the built-up roofs on the college buildings. Problems arose with the roofs and plaintiff instituted suit against Glenwal and others which ended in settlement, payment of a substantial sum of money to plaintiff, and entry of an order of dismissal on June 21, 1977.
Not made parties in that case were the defendants in this case. Fyfe is now sued because it actually constructed the roof. John Delage is joined as a successor to the assets of Fyfe. The Celotex Corporation  and by amendment, The Upjohn Company  were joined as suppliers of materials. Summary judgment on other grounds has been granted as to The Celotex Corporation. Sued as a supplier of materials and as the issuer of a bond on the roof was defendant GAF Corporation (GAF). Commercial Union Insurance Company was joined as surety for GAF.
Defendants, by third-party action, made third-party defendants entities, which had been joined in the first action: Glenwal, Frank Grad & Sons, the architect, and John Doe, a fictitious name.
*291 It is clear from the papers that plaintiff complained about the roof before the end of 1975, and that the 1977 settlement disposed of at least some of the issues arising from these complaints. Beyond this conclusion I need not go because it is not necessary to decide now whether plaintiff is barred by reason of that settlement as to the entities who were then direct defendants and now have been joined as third-party defendants, or whether the present allegations as to defects in the roof are concluded by reason of collateral estoppel or some aspect of the doctrine of res judicata. This is so because counsel have agreed that if I determine that a statute of limitations is applicable to this proceeding, plaintiff's cause of action fails.
In the first brief plaintiff states:
Plaintiff will assume, for the purposes of this motion only, that the applicable Statutes of Limitations had run at the time that it instituted the present action.
At oral argument counsel agreed that if it were determined that plaintiff was not immune from the bar of the statute of limitations, the litigation would be completed. I am not certain that this agreement was providently made in its entirety, because counsel for parties who are sued as providers of materials, rather than as those who performed services, urge that the four-year statute of limitations in N.J.S.A. 12A:2-725(1) of the Uniform Commercial Code, and not the six-year statute in N.J.S.A. 2A:14-1, controls, suggesting that if the six-year statute is applicable, there may be a fact question as to when the cause of action arose.
On this question Heavner v. Uniroyal, Inc., 63 N.J. 130 (1973), especially when considered together with Santor v. A & M Karagheusian, Inc., 44 N.J. 52 (1965), and Rosenau v. New Brunswick, 51 N.J. 130 (1968), is dispositive. The proponents of the thesis that the four-year statute, rather than the six-year statute, controls, argue that Heavner is and should be limited to cases involving consumer transactions, and that the case at bar is a mercantile transaction. Heavner did involve what could be characterized as a "consumer transaction." However, I do not view the law laid down in that case with respect to the statute *292 of limitations as limited to seller-consumer situations. A decisive fact in that case is that both the immediate seller and the manufacturer were parties-defendants. The claim against the manufacturer rested, to use Justice Hall's language in discussing Santor, "not on any contractual basis, but on a breach of duty with consequential injury." 63 N.J. at 149. The court in Heavner was troubled by the possibility of applying different statutes of limitation to the retailer and the manufacturer when made parties defendant. As to this, Justice Hall said:
The upshot of the Code approach, if its provisions are to apply only, as the statutory language and comments dictate, to a limited class of consumer-user consequential damage actions against a retailer and case law is to govern as to other such actions and suits against manufacturers or others preceding the ultimate seller in the distributive chain, is one set of substantive rules for the first category of actions and another more liberal set for the second. This makes no sense and is unjust to the claimant, who in many instances may be able to obtain jurisdiction only over the ultimate seller and not over the manufacturer. And it would, of course, be most awkward and confusing when, as here, the manufacturer and retailer are both sued in the same action. We cannot attribute any such intention to the Legislature when it adopted the Code. [at 155]
The ruling was, therefore, as stated by Justice Hall:
We consequently further hold that N.J.S.A. 12A:2-725 does not apply to strict liability in tort actions for consequential personal injury and property damage against the ultimate seller or supplier and that such actions are governed, like those against a manufacturer, by our general statutes of limitation. [at 157]
In a footnote (at 157, n. 16) the Justice added: "We do not reach the question whether N.J.S.A. 12A:2-725 applies to actions merely for loss-of-the-bargain or economic damage in the commercial sense." I deduce from this that the statute of limitations in N.J.S.A. 2A:14-1 applies in all cases in suits against the manufacturer on the theory of strict liability in tort, and that N.J.S.A. 12A:2-725 may apply in actions by user against seller in "loss-of-the-bargain or economic damage in the commercial sense" situation.
For an analysis similar to this, see "Products Liability," 6 Rutgers-Camden L.J. 203 (1974-1975); "1973 N.J. Supreme Court Term," 27 Rutgers L.Rev. 465, 486 (1974).
*293 In the case at hand the suit is not between user and seller, but between user and the roofer who actually built the roof under subcontract with the general contractor and the suppliers of materials to the roofer. The fact pattern is, therefore, precisely that of the manufacturer-defendant in Heavner and in Santor. Plaintiff complaint sounds in negligence, breach of warranty and strict liability in tort. All are tort causes of action and the statute of limitations, N.J.S.A. 2A:14-1, applies to "any tortious injury." It follows that the six-year statute controls.
I turn now to plaintiff's contention that the rule of nullum tempus bars use of the statute of limitations.
I conclude the argument is unsound; first, because historically nullum tempus did not apply and does not to an entity such as a county college; second, because even if it did, it may not be invoked where plaintiff sues in a proprietary, rather than public capacity.
The doctrine exempting a public body from the bar of the statute of limitations originated "as one of the royal prerogatives, justified on the ground that the king was too busy looking after the welfare of his subjects to sue." "Developments  Statutes of Limitations," 63 Harv.L.Rev. 1177, 1251. As derivative from the concept of sovereignty, it is related to the doctrine of sovereign immunity which exempts an entity from suit. As a matter of logic it would seem that an entity which is not protected from suit by sovereign immunity would also not be entitled to benefit from nullum tempus. Nevertheless, the doctrine seems to have had an identity of its own, so that it has been invoked by public entities, not in all cases immune from suit. Jersey City v. Hall, 79 N.J.L. 559 (E. & A. 1910); Schultz v. Wilson, 44 N.J. Super. 591 (App.Div. 1957), certif. den. 24 N.J. 546 (1957); Trustees for the Support of Public Schools v. Ott & Brewer Co., 135 N.J. Eq. 174 (Ch. 1944); State v. Owen, 23 N.J. Misc. 123 (Sup.Ct. 1945); see Cross v. Morristown, 18 N.J. Eq. 305 (Ch. 1867); Trustees for the Support of Public Schools v. *294 Trenton, 30 N.J. Eq. 667, 684 (E. & A. 1879); Trenton and Mercer Cty. Traction Corp. v. Ewing, 87 N.J. Eq. 397 (Ch. 1917), rev'd 90 N.J. Eq. 560 (1919); Hyland v. Kirkman, 157 N.J. Super. 565 (Ch.Div. 1978); Veterans Loan Auth. v. Wilk, 61 N.J. Super. 65 (App.Div. 1960). See, also, Leonardis v. Bunnell, 164 N.J. Super. 338 (App.Div. 1978), rev'g 147 N.J. Super. 417 (Law Div. 1977), certif. den. 81 N.J. 265 (1979). All of these cases involve vindication of the State of New Jersey's tidewater or riparian rights[1] or a fund for the support of state education or public rights of passage in a street, with the exception of Trenton and Mercer Cty. Traction Corp., supra. Since the issue is whether an entity such as plaintiff has the prerogatives of the State, the fact that in none of these cases was an independent entity similar to plaintiff involved, suggests strongly that even when the doctrine of sovereign rights was in full flower, relatively minor entities, such as plaintiff, could not invoke nullum tempus.
In Trenton and Mercer Cty. Traction Corp. the trial court held municipal corporations estopped as against a public utility's right to maintain its tracts. The Court of Errors and Appeals disagreed with the trial court, ruling that laches could not be invoked against the municipalities (90 N.J. Eq. at 563). The case involved the special situation of public rights to a street. Significant is that the trial court distinguished public and private rights of a municipal corporation, quoting from a text by Judge Dillon, as follows:
Upon consideration, it will perhaps appear that the following view is correct: Municipal corporations, as we have seen, are regarded as having, in some respects, a double character  one public and the other (by way of distinction) private. As respects property not held for public use, or upon public trusts, and as respects contracts and rights of a private nature, there is no reason why such *295 corporations should not fall within limitation statutes, and be affected by them unless excluded from them. For example, in an action on contract or for tort, a municipal corporation may plead or have pleaded against it the statute of limitations. But such a corporation does not own and cannot alien public streets or places, and no mere laches on its part or on that of its officers can defeat the right of the public thereto; yet there may grow up, in consequence, private rights of more persuasive force in the particular case than those of the public. [at 402]
The Court of Errors and Appeals did not disagree with Judge Dillon's statement of the law. Properly viewed, the Court of Errors and Appeals' ruling diminishes, rather than enhances, application of sovereign immunity.
Cumberland Cty. Welfare Bd. v. Roberts, 139 N.J. Super. 126 (Law Div. 1976), aff'd o.b. 148 N.J. Super. 456 (App.Div. 1977), dealt with a factual situation different from those in the cases cited above in which all the rights involved were either directly derived from the State, as in the case of riparian or tidewater rights, or concerned state funds or public rights of passage. The case turned upon the interpretation of N.J.S.A. 44:7-15, which stated that the lien of a county welfare board had "the same force and effect as a judgment." Judge Miller held that the prescriptive period for bringing an action on a judgment (N.J.S.A. 2A:14-5) applied to the welfare lien, and stated that the welfare board was subject to the statute of limitations. I would regard the affirmance by the Appellate Division of this decision as dispositive of this case, except for two considerations:
1. The argument on behalf of plaintiff that it, as a county college, is different from a welfare board; and
2. The fact that Cumberland County concerned an interpretation of N.J.S.A. 44:7-15, which defined the county welfare lien.
This case can be read as turning on the interpretation of that statutory provision, and not as a direct holding that the doctrine of nullum tempus no longer survives in this State. This is particularly true since the authorities upon which Judge Miller relied (139 N.J. Super. at 130) were cases which hold that a public body is subject to the doctrines of estoppel and waiver.
Since nullum tempus arose as an attribute of sovereignty, it is relevant that the basic concept of sovereignty which gives even *296 the State rights different from ordinary litigants has been discredited. P, T & L Co. v. Transportation Dept. Comm'r, 55 N.J. 341 (1970); Willis v. Conservation & Ec. Dev. Dept., 55 N.J. 534 (1970); 63 Harv.L.Rev., supra at 1252.
The Tort Claims Act (N.J.S.A. 59:1-1 et seq.) and the New Jersey Contractual Liability Act (N.J.S.A. 59:13-1 et seq.) have little relevance to the issues here involved. Whether considered as re-establishing sovereign immunity (see Pinckney v. Jersey City, 140 N.J. Super. 96, 100 (Law Div. 1976)), or as an abrogation of sovereign immunity (see Vedutis v. Tesi, 135 N.J. Super. 337, 343 (Law Div. 1975), aff'd 142 N.J. Super. 492 (App.Div. 1976)), conceptually they have little effect upon whether entities such as plaintiff have attributes of sovereignty. Such bodies have never been immune to suits on contract, and have long been subject to actions in tort. See Willis, supra 55 N.J. at 539; Cushing, "A Survey of Municipal Immunity in New Jersey," 3 Seton Hall L.Rev. 416, at 437 (1972).
An additional important fact is that the statute under which plaintiff was created makes it subject to suit. In Briscoe v. Rutgers, 130 N.J. Super. 493 (Law Div. 1974), Judge Dwyer ruled (at 503) that Rutgers University was not immune to suit under the doctrine of sovereign immunity because it had corporate power "to sue and be sued." The Rutgers litigation is significant because it continued at 157 N.J. Super. 357 (Law Div. 1978), aff'd sub nom Broadway Maintenance v. Rutgers, 90 N.J. 253 (1982), without mention of the problem of sovereign immunity. Accord: Sayreville v. N.J. Highway Auth., 67 N.J. Super. 271 (Law Div. 1961); Garden State Parkway Emp. Union v. N.J. Highway Auth., 105 N.J. Super. 168 (App.Div. 1969).
From the foregoing it is apparent that a county college is not the kind of body which ever enjoyed the appurtenances of sovereignty in this State. It follows that it may not invoke the doctrine of nullum tempus. This ruling is in accord with the majority view on the subject.
*297 Counsel for plaintiff have cited decisions supporting the proposition that a statute of limitations may not be invoked against a school district. However, the prevailing view is that school districts neither have sovereign immunity nor have the benefit of the doctrine of nullum tempus. In 98 A.L.R. 1221 "Statute of Limitations as applicable to actions by or against school districts," it is said:
The general principles as to the immunity of the sovereign from laches and statutes of limitation which arose in England have been applied in reference to the statutes of the American Union. Statutes of limitations do not apply to a state when suing in its sovereign capacity, unless the statute provides to the contrary, or unless the state is necessarily included by the nature of the mischiefs to be remedied. 17 R.C.L. 970.
It is generally held, however, that the principles of immunity do not extend to school districts, and that the Statute of Limitations is applicable and may be pleaded as a defense to actions brought by such districts. [at 1221]
Accord: 51 Am.Jur.2d, Limitation of Actions, § 417 at 890; 53 C.J.S. Limitation of Actions, § 17a at 947.
Finally, the rights which plaintiff seeks to enforce here are proprietary, not public. The distinction between such rights upon which the trial court relied in Trenton and Mercer Cty. Traction Corp., supra, which I noted, was not disavowed by the Court of Errors and Appeals in its reversal, is widely accepted. 53 C.J.S. supra, § 17, at 949. It may be difficult to draw the line between private and public rights in other contexts, but here, where plaintiff sues because of alleged defects in building roofs, it is clear that it stands on no different footing than any owner of a building.
During preliminary stages of this litigation I foreclosed discovery intended to show that the bulk of plaintiff's funds are public in origin. Undoubtedly, much of it is. See Atlantic Cty. Commun. College v. Civil Service Comm'n, 59 N.J. 102, 110 (1971). However, it matters not how plaintiff is financed. For the reasons stated, plaintiff is not entitled to invoke the doctrine of nullum tempus.
As noted, the ruling that the six-year statute, rather than the four-year statute, is applicable, may lead to the assertion that a *298 fact question remains for decision. If that is so, appropriate motions should be made.
On the assumption that the stipulation made in court when this matter was argued is viable, this ruling disposes of all counts of the amended complaint, except those which are addressed to GAF Corporation as principal of a 20-year roofing bond and Commercial Union Insurance Company as surety thereon.
NOTES
[1] Litigation as to tidelands and riparian rights still continues as the result of the November 3, 1981 amendment to the New Jersey Constitution. Fairleigh S. Dickinson Jr. v. Fund for the Support of Free Public Schools, 187 N.J. Super. 224 (App.Div. 1982). The underlying premise is that as to this no statute of limitations is involved.