193 N.J. Super. 696 (1984)
475 A.2d 676
THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DAVID BOSCO, DEFENDANT-APPELLANT. THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DANIEL CODY, DEFENDANT-APPELLANT. THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS DUNNE, DEFENDANT-APPELLANT. THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MICHAEL DELITIZIA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 10, 1984.
Decided May 4, 1984.
*698 Before Judges ANTELL, JOELSON and McELROY.
Smith, Don, Alampi & Scalo, for defendants-appellants Thomas Dunne, Daniel Cody, David Bosco and Michael Delitizia (Philip Scalo of counsel and on the brief and Thomas Castano and Paul Vagianos on the brief).
Hugh H. Welsh, for plaintiff-respondent the Port Authority of New York and New Jersey (Mary D. Audick on the brief).
PER CURIAM.
In these appeals from the separate money judgments entered in the District Courts of Ocean, Hudson and Union counties, which we have consolidated sua sponte, the meritorious question presented is whether the Statute of Limitations, N.J.S.A. 2A:14-1, bars a right of recovery asserted by the Port Authority of New York and New Jersey ("Port Authority").
Defendants were all Port Authority policemen when, in 1974, they participated in a supervisory development program offered by their employer in which they took undergraduate courses at the John Jay School of Justice and Adelphi University. Their tuition was paid by the Port Authority on the understanding that if defendants were reimbursed from any other source for the courses they were then in turn to reimburse the Port Authority for its advances.
Although defendants received payments from the Veterans Administration they failed to reimburse the Port Authority as agreed and these suits were thereupon instituted September 27, 1982 for $801 against defendant Bosco, on June 28, 1982 for $1600 against defendant Cody, on June 25, 1982 for $1054 against defendant Dunne, and on July 1, 1982 for $2080 against defendant Delitizia. Applying the maxim nullum tempus occurrit regi ("time does not run against the sovereign"), the trial judges rejected the defense of limitations. On this appeal defendants contend that the doctrine is unavailable to the Port Authority.
*699 It is settled in the State of New Jersey that the Statute of Limitations does not run against the State or any of its agencies and subdivisions. State v. United States Steel Corp., 22 N.J. 341, 352 (1956); Environmental Protect. Dep't. v. Ventron Corp., 182 N.J. Super. 210, 226 (App.Div. 1981), mod. 94 N.J. 254 (1983); Veterans Loan Authority v. Wilk, 61 N.J. Super. 65, 70-71 (App.Div. 1960). The doctrine
springs from the superior and pre-eminent policy to preserve public rights, revenues and property from injury and loss otherwise resulting from the inadvertence or neglect of public agents. In a representative government under which the people act only through the authority delegated to their agents, the reasons for the application of the doctrine continue to be cogent. The principle has been received with favor by our courts. [Trustees, &c., Public Schools v. The Ott & Brewer Co., 135 N.J. Eq. 174, 177-78 (Ch. 1944).]
Also see Guaranty Trust Co. of N.Y. v. U.S., 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224, 1227-1228 (1937).
The Port Authority's function has been described in the following language of Miller v. The Port of New York Authority, 18 N.J. Misc. 601, 604
The history of the creation of the Authority with a statement of the several legislative enactments in furtherance of the objects thereof, and of the powers conferred by these enactments and by the compact of April 30th, 1921, between New York and New Jersey, will be found in Gerhardt v. Helvering [Helvering v. Gerhardt], 304 U.S. 405 [58 S.Ct. 969, 82 L.Ed. 1427 (1938)], from which it appears that the Authority is a bi-state corporation, created by compact between the two states, which directed the Authority to recommend a comprehensive plan for improving the port of New York and facilitating its use, by the construction and operation of bridges, tunnels, terminals and other facilities. Pursuant to further legislation of the two states, the Authority has constructed interstate tunnels and bridges financed in large part by funds advanced by the two states and by the Authority's issuance and sale of its bonds. It collects tolls for the use of such facilities, but it has no stock or stockholders and is owned by no private persons or corporations. Its projects are operated in behalf of the two states and in the interest of the public and none of its profits enure to the benefit of private persons. Its property and the bonds and other securities issued by it are exempt by statute from state taxation. The statutes relating to its projects declare that they are all for the benefit of the people of the two states, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and that the Authority shall be regarded as performing a governmental function with reference to said projects and shall be required to pay no taxes or assessments upon any property acquired by it for the purposes of its creation. Furthermore by statute (chapter 5, Pamph.L. 1931 (N.J.S.A. 32:1-141 to 32:1-143); chapter 48, Pamph.L., N.Y. 1931), the Authority's *700 surplus revenues are subject to disposition by the states. It is to be noted also that the treaty of 1921 which created the Authority does not provide that it shall be subject to suit.
Thus it was held that the Port Authority is a "direct state agency, exercising a governmental function." Id. 18 N.J. Misc. at 606. It has been elsewhere described as "`an organic whole, split between the lawmaking of two states ... a joint or common agency of the states of New York and New Jersey. It performs governmental functions which project beyond state lines.'" Whalen v. Wagner, 4 N.Y.2d 575, 176 N.Y.S.2d 616, 152 N.E.2d 54, 57 (N.Y. 1958). As that court said, "[q]uotations of this nature could be multiplied indefinitely...." Ibid. Furthermore, it has been determined to be a "political subdivision" of a state or territory "to which has been delegated the right to exercise part of the sovereign power of the State or Territory." Commissioner of Internal Rev. v. Hamberg's Estate, 144 F.2d 998, 999, 1000 (2d Cir.1944) cert. den. 323 U.S. 792, 65 S.Ct. 433, 89 L.Ed. 631 (1945). There is no doubt that the Port Authority as a state governmental agency is exempt from the bar of the Statute of Limitations.
Until 1951 the Port Authority "as an arm and agency of the states," enjoyed sovereign immunity from suit. See cases collected at Port of N.Y.Authority v. Weehawken Tp., 27 N.J. Super. 328, 333 (Ch.Div. 1953), rev'd other grounds 14 N.J. 570 (1954). We see no merit to defendants' contention that because the Legislature abrogated this particular attribute of sovereignty by N.J.S.A. 32:1-157 the status of the Port Authority as a state agency was thereby withdrawn in all other respects. Indeed, the State of New Jersey itself, as well as all public entities within its boundaries, is answerable to suit. New Jersey Tort Claims Act, N.J.S.A. 59:1-2 et seq. Yet, it cannot be seriously argued that by reason thereof their other exemptions and privileges have also been forfeited. As it was observed in Bergen Commun. College Trustees v. J.P. Fyfe, Inc., 188 N.J. Super. 288, 293 (Law Div. 1982), aff'd 192 N.J. Super. 433 (App.Div. 1983), the doctrine of nullum tempus *701 "seems to have had an identity of its own, so that it has been invoked by public entities, not in all cases immune from suit. [Cases cited]."
Finally, we express our satisfaction that the right of recovery for which plaintiff seeks enforcement herein is of a public, not a proprietary, character. See Bergen Commun. College Trustees, supra, at 188 N.J. Super. 297. The tuition monies were advanced to improve defendants' competence to discharge their public duties on the understanding that the monies would be reimbursed if defendants were compensated from another source. Since the monies were advanced in the first instance to serve a public purpose the Port Authority's right to recovery is of the same character.
Affirmed.