## School District of Philadelphia v. Planet Insurance Company

*Kenneth M. Cushman and Joyce K. Hackenbrach,* for plaintiff.

*Reeder R. Fox, Patrick W. Liddle, Jonathan D. Herbst, Martin G. Mallay, Jerome E. Marks and Bruce Phillips,* for defendants.

PRATTIS, J., May 19, 1987—This is an action by the school district of Philadelphia to recover substantial damages which it has suffered as a result of defective electrical construction at three Philadelphia public schools: Martin Luther King High School, Ada H. H. Lewis Middle School and George Wharton Pepper Middle School. The electrical systems at all three schools were furnished and installed by A&B Electrical Contracting Co. A&B is now defunct and has not been named in this action. Defendants are the performance bond sureties, a number of architects, and the agency which certified the electrical work in the schools.

The motion now before the court has been brought by defendant Planet Insurance Co., the surety on A&B's performance bond for Martin Luther King High School. The sole basis of Planet's motion is that the school district's claims are barred, as a matter of law, by 42 Pa.C.S. §5523(3), a one-year statute of limitations for actions "upon any . . . performance bond." The school district argues that under the doctrine of nullum tempus occurrit regi ("time does not run against the King"), it is immune from the statute of limitations.

This case does not have any major factual disputes and is therefore decided on issues of law.

## FINDINGS OF FACT

(1) On November 10, 1969, the school district entered into a contract with A&B for the installation of the electrical system at the King School.

(2) On November 10, 1969, Planet provided a performance bond, no. P2 04 36 64, to the school district on behalf of A&B.

(3) Construction of the school began in 1969 and the school district opened the school in February 1973.

(4) In a letter dated February 28, 1974, James Ricciuti, the school district's engineering supervisor at the time, stated that the school district accepted A&B's work in March 1972, and that as of March 1974, the electrical work was "99.5 percent complete."

(5) On August 18, 1977, Nicholas T. Pitts, Chief of Special Investigations for the city of Philadelphia, sent a memorandum to the city controller informing him that a preliminary inspection of the electrical work at the school indicated that the electrical work was installed with ". . . complete disregard for adherence to specifications, drawings and compliance with the National Electric Code . . .," and there existed ". . . extreme dangers present to life and property."

(6) On September 7, 1977, the Middle Department Inspection Agency inspected the school and reported various electrical wiring problems, and included specific repair suggestions to the sub-station, boiler room, auditorium lobby, mechanical room and auditorium.

(7) In December 1985, the school district instituted this lawsuit, claiming, in count I that A&B defectively installed the wiring in the school, and that Planet is liable to the school district under its surety contract with A&B.

(8) In its complaint, the school district conceded that it was aware of Mr. Pitts' 1977 memorandum and the 1977 Middle Department inspection report.

(9) At no time following the completion of construction of the school in 1976, to the commencement of this action in 1985, did the school district notify Planet of any alleged deficiencies in the work of A&B or make any claim under Planet's bond.

(10) 42 Pa.C.S. §5523(3) provides for a one-year period of limitation in an action on a performace bond, stating:

"The following actions and proceedings must be commenced within one year:

"(3) Any action upon any payment or performance bond."

(11) The school district alleges in its complaint that A&B breached its contract with the school district when it installed seriously defective electrical equipment in the school.

(12) Pa.R.C.P. 1035(b) provides that a court should grant summary judgment when the record viewed in the light most favorable to the non-moving party reveals that the moving party is entitled to the judgment as a matter of law and there is no genuine issue as to material fact.

*Is The School District Exercising A Strictly Governmental Function And Thus Entitled To Nullum Tempus, When It Enters A Contract For Construction Of School Facilities?*

*Held. Yes.*

Defendant Planet Insurance Co. files a motion for summary judgment in response to plaintiff's action on the contract, alleging the statute of limitations as a defense.

Plaintiff, school district, claims that the doctrine of nullum tempus applies, and therefore they are not barred by the statute of limitations.

Planet argues that the school district engaged in a private contract with defendant and was not acting in a sovereign capacity.

*Standard:* Unless otherwise provided, the statute of limitations cannot be pleaded against such political subdivision, etc. when they are *seeking to enforce strictly public rights*. That is, when the cause of action accrues to them in their governmental capacity and the suit is brought to enforce an obligation imposed by law as distinguished from one arising out of an agreement voluntarily entered into by defendant. *City of Philadelphia v. Holmes Electric Protective Company of Philadelphia,* 335 Pa. 273, 6 A.2d 884 (1939).

Under the doctrine of nullum tempus, a political subdivision is immune from the statute of limitations only if it is acting in a sovereign rather than a proprietary capacity.

## PLANET INSURANCE POSITION

Defendant argues Pennsylvania courts have expressly held that a lawsuit to enforce a contract claim is not a sovereign act, and that plaintiff in such an action is not entitled to immunity from the statute of limitations. In *Holmes,* the city sued to enforce an ordinance granting an alarm company permission to run wires under city streets in return for a percentage of the company's gross receipts. The Supreme Court found that the ordinance had the same legal effect as "any other contract," and held:

"Since, then, the city of Philadelphia is here suing, not to compel the performance of a duty imposed by law, nor to assert a governmental power in-

herent in it as a municipal corporation, but to enforce a contractual obligation assumed by defendant when it accepted the privilege granted by the ordinance, the statute of limitations is applicable to the suit." Id. at 278-80, 6 A.2d at 887-88.

Similarly, in *Pennsylvania Turnpike Commission v. Atlantic Richfield Co.*, 482 Pa. 615, 394 A.2d 491 (1978), the Pennsylvania Turnpike Commission sued to enforce a lease it had entered with Atlantic Richfield for service station locations along the Pennsylvania Turnpike. The Supreme court cited *Holmes*, supra, and held that because the commission's claim was "an action on an agreement voluntarily entered into by the commission," it was subject to the statute of limitations.

Although neither *Holmes* nor *Atlantic Richfield* involved an action brought by a school district, the legal principle of these cases may apply in the case at hand. As in *Holmes* and *Atlantic Richfield*, the school district seeks to enforce a contract voluntarily entered by it and Planet. The duties willingly assumed by the parties to that contract simply cannot be characterized as obligations "imposed by law." Under the test of *Holmes* and *Atlantic Richfield*, the school district in this action is not immune from the statute of limitations.

## SCHOOL DISTRICT'S POSITION

The school district maintains the rights they seek to enforce are not proprietary, private or essentially local functions. In support of this, they direct our attention to the Pennsylvania Constitution, Article 3, §14 which provides:

"The general assembly shall provide for the maintenance and support of a thorough and efficient sys-

tem of public education to serve the needs of the commonwealth."

The buildings were constructed solely to carry out the constitutionally mandated state function of public education and the contracts for the construction of the buildings were financed with public funds.

In addition, all school districts must comply with the statewide building and costs standards established by the Pennsylvania Board of Education in constructing or re-constructing school buildings. Pa. Stat. Ann., tit. 24 §7-733.

Due to the above, the function of constructing school buildings is thus a major, essential incident to the sovereign function of providing public education for all citizens of the commonwealth. It does not fall within the class of activities of solely local concern that tend to characterize "municipal," as opposed to "commonwealth" or "sovereign" functions, and so should not be deprived of the protection of nullum tempus merely because the commonwealth has chosen to carry out the functions by delegation, rather than directly.

In distinguishing defendant's two main cases, plaintiff makes the following remarks:

Plaintiff claims the city was acting on its own behalf in *Holmes* when it contracted to allow defendant to run electrical wires under city streets. It was not carrying out a function mandated by the Pennsylvania Constitution but a strictly local function.

*Atlantic Richfield* was decided while the concepts of immunities accorded the commonwealth were in a state of flux, and that the contract the commission sought to enforce was for service stations' leases and did not rise to the level of a contract to construct schools.

## CONCLUSIONS

This case presents a problem because the Pennsylvania courts have not decided this issue with the specific facts involved. However, out-of-state courts have decided this issue. While some courts held that a local school board acting to recover under a construction contract was immune from the statute of limitations, the majority held that a school district suing to enforce a contract claim is acting in a proprietary capacity and not immune from the statute of limitations.

If we were to be persuaded by the sheer number of favorable decisions then we would have to agree with defendant that the doctrine of nullum tempus does not apply since these cases held that contract actions are "proprietary, not public." See *R.A. Civitello v. City of New Haven*, 6 Conn. App. 212, 504 A.2d 542 (1986); *Board of Education v. Dow Chemical Company, Chem. Co.*, 40 Conn. Sup. 141, 482 A.2d 1226 (1984); *Board of Trustees of Bergen Comm. College v. J.P. Fyfe Inc.*, 188 N.J. Super. 288, 457 A.2d 83 (1982); *Brown v. Trustees of Schools*, 224 Ill. 184, 79 N.E. 579 (1906).

If we follow the minority view of out-of-state courts, then we must find the opposite way.

In Pennsylvania, the courts have not dealt directly with the facts in this case but Pennsylvania courts have held that a lawsuit to enforce a voluntary contract claim is not a sovereign act, and that a plaintiff city is not entitled to immunity from the statute of limitations. See *Holmes,* supra, and *Atlantic Richfield,* supra.

If we are to follow the legal principle stated in the *Holmes* and *Atlantic Richfield,* that duties willingly assumed by parties in a voluntary contract are not obligations "imposed by law," then the school dis-

trict is not immune from the statute of limitations. However, neither the state Constitution nor the Legislature mandated that the city lease easements for underground lines, or that the turnpike commission lease land for a service station.

However, the case at hand may require a departure from these decisions of prior Pennsylvania cases; certainly the facts differ.

The school district was created for the purpose of educating the public. Article 3 §14 of the Pennsylvania Constitution commands the creation of a body or agency to "provide for the maintenance and support of a . . . system of education to serve the needs of the commonwealth."

Section 7-701 of the Public School Code of 1949 states in part:

"The board of school directors . . . shall provide the necessary grounds and suitable school buildings to accommodate all the children between the ages of 6 and 21. . . . Such building shall be constructed, furnished, equipped and maintained in a proper manner herein provided. Suitable provisions shall be made for the heating, ventilating, adequate lighting, . . . .

"§7-733 Standards of state Board of Education states in part that (a) all public school buildings hereafter built or rebuilt shall conform to standards established by the state Board of Education as to heating and ventilating . . . light area. . . .

"§7-751 (a) relating to contracts, command that the school board enter separate contracts with the lowest responsible bidder after due public notice asking for competitive bids."

These statutes make it clear that in building schools, the school district must follow commands set forth by the Pennsylvania Constitution and the

Legislature of the commonwealth. Accordingly, in this context, the school district is an arm or agency of the state with attributes of sovereignty inherent in the state. Plaintiff did not enter the contract voluntarily, but instead entered mandatorily at the instruction of the state Constitution and the 1949 Public School Code. The state has a strong interest in educating our children and must provide buildings in which to house them during the process. In order to carry out this duty, someone must build and construct the schools to house the children.

To prevent the school district from asserting the protections granted to the commonwealth would frustrate the intent and purpose of the Pennsylvania Constitution, Article 3 §14, and the Public School Code of 1949.

The school district is a creature or agency of Legislature and has only powers that are granted by statute. *Pa. Human Relations Commonwealth v. Chester School District,* 209 Pa. Super. 37, 224 A.2d 811 (1966); *Chartiers Val. Joint Schools v. County Board of School Directors of Allegheny County,* 418 Pa. 520, 211 A.2d 487 (1965).

A school district is vested with statutory authority to establish suitable school facilities. *Mid Valley Taxpayers Ass'n v. Mid Valley School Dist.,* 52 Pa. Commw. 402, 416 A.2d 590 (1980).

School districts act as agencies of the state Legislature in administering educational programs within the district. *Chambersburg Area School District v. Commonwealth Pa. Labor Relations Board,* 60 Pa. Commw. 29, 430 A.2d 740 (1981).

Thus, it appears that the school district has no choice and is acting by constitutional mandate when it enters a construction contract. It is carrying

out a public function by educating students of the state or community. Nullum tempus applies to the school district and they are not barred by the statute of limitations from bringing an action.