GUS A. PAVLAKOS *et al.*, Plaintiffs-Appellants, v. THE DEPARTMENT OF LABOR, Defendant-Appellee.

First District (3rd Division) No. 82—2635

Opinion filed October 24, 1984.—Rehearing denied December 7, 1984.

Burke & Burke, Ltd., of Springfield (John M. Burke, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Orisha K. Zelisko, Special Assistant Attorney General, of counsel), for appellee.

JUSTICE WHITE delivered the opinion of the court:

Plaintiffs, Gus A. Pavlakos and G.H.P. Corporation, appeal from an order of the trial court affirming the decision of the Director of Labor finding plaintiffs liable, pursuant to section 2600 of the Illinois Unemployment Insurance Act (Ill. Rev. Stat. 1979, ch. 48, par. 750), for unpaid contributions, interest and penalties incurred by Metropolitan Nursing Care Service, Inc. (Metropolitan). On appeal plaintiffs contend that: (1) section 2600 violates the equal protection and due process clauses of the Illinois and United States constitutions; (2) the Department of Labor (Department) is barred by the doctrines of estoppel and *laches* from recovering the unpaid contributions, interest and penalties; and (3) the findings of fact of the Director of Labor are against the manifest weight of the evidence.

On October 5, 1979, plaintiffs agreed to purchase all the assets of Metropolitan, a medical personnel agency which furnished registered nurses, practical nurses, and nurses' aides to hospitals, nursing homes and private homes. The assets of Metropolitan consisted of telephone numbers and listings, list of customers, list of licensed practical nurses, registered nurses and nurses' aides, leasehold rights and improvements, logo of Metropolitan, and the interest of Metropolitan in

that name and in the name of Metro Nursing, and good will. As consideration for the sale, plaintiffs were to pay certain liens which had been filed against Metropolitan by the FDIC, the Internal Revenue Service and the Illinois Department of Revenue.

Pursuant to sections 6—105 and 6—106 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, pars. 6—105, 6—106), plaintiffs sent notice of bulk sale to the creditors of Metropolitan. A notice of bulk sale was also sent to the Department of Labor and received by it on October 17, 1979.[1] The Department did not respond to the notice. Thereafter, on November 12, 1979, plaintiffs consummated the sale.

On March 24, 1980, the Department of Labor mailed to plaintiffs a notice of determination and assessment against purchaser or transferee and demand for payment informing plaintiffs that Metropolitan was indebted to the Department for unpaid contributions, interest and penalties;[2] that Metropolitan had failed to pay the amount of the contributions, interest and penalties; and that plaintiffs, as purchasers of all the assets of Metropolitan, were being assessed the sums due. The unpaid contributions, interest and penalties amounted to $99,829.42.

Plaintiffs contend that section 2600 of the Unemployment Insurance Act denies them the equal protection of the laws. However, the briefs submitted by plaintiffs leave this court in doubt as to whether plaintiffs maintain that section 2600 is unconstitutional because it imposes a higher burden on purchasers of businesses indebted to the Department or because it accords preferential treatment to the Department. We therefore address both arguments.

 Under traditional equal protection analysis, a statute classifying persons or objects is not unconstitutional because it affects one class and not another, provided that it affects all members of the same class alike and provided that the classification is not arbitrary, but based upon some substantial difference in circumstances properly related to the classification. (*Fujimura v. Chicago Transit Authority* (1977), 67 Ill. 2d 506, 512, 368 N.E.2d 105.) Furthermore, the legislature may differentiate between persons similarly situated as long as the classification bears a reasonable relationship to a legitimate legislative purpose. (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 578, 376 N.E.2d 1382; *S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70, 76, 329 N.E.2d 213.) Section 2600 of the Unemployment Insurance Act in relevant part provides:

---

[1] Plaintiffs were allegedly unaware of any outstanding debts to the Department but mailed the notice as a matter of good business practice.

[2] Metropolitan's indebtedness to the Department spanned a period of seven years.

"The purchaser or transferee shall withhold sufficient of the purchase money to cover the amount of all contributions, interest and penalties due and unpaid by the seller or transferor or, if the payment of money is not involved, shall withhold the performance of the condition that constitutes the consideration for the transfer, until such time as the seller shall produce a receipt from the Director showing that the contributions, interest and penalties have been paid or a certificate that no contributions, interest or penalties are due. If the seller or transferor shall fail to pay such contributions within the 10 days specified, then the purchaser or transferee shall pay the money so withheld to the Director of Labor. If such seller or transferor shall fail to pay the aforementioned contributions, interest or penalties within the 10 days and said purchaser or transferee shall either fail to withhold such purchase money as above required or fail to pay the same to the Director immediately after the expiration of 10 days from the date of such sale as above required, or shall fail to withhold the performance of the condition that constitutes the consideration for the transfer in cases where the payment of money is not involved or is not the sole consideration, such purchaser or transferee shall be personally liable to the Director for the payment to the Director of the contributions, interest and penalties incurred by the seller or transferor up to the amount of the reasonable value of the property acquired by him." (Ill. Rev. Stat. 1979, ch. 48, par. 750.)

Section 2600 treats purchasers or transferees of businesses which are indebted to the Department alike. These purchasers or transferees are required to withhold part of the purchase money or performance of the condition that constitutes the consideration for the transfer until the seller produces a receipt from the Department showing that the contributions have been paid or a certificate that no contributions are due. If the purchasers fail to withhold the money or other consideration, they will be held liable for the unpaid contributions. All members of the class affected by section 2600 are thus treated similarly.

Plaintiffs maintain that they are similarly situated to purchasers of businesses indebted to the Illinois Department of Revenue pursuant to the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 440 *et seq.*) or to purchasers of businesses indebted to private individuals. Plaintiffs argue that, pursuant to section 2600, they have a continuing obligation to discover a seller's indebtedness and to withhold purchase money, unlike purchasers of businesses indebted to pri-

vate creditors or to the Department of Revenue. Plaintiffs therefore conclude that section 2600 violates the equal protection clause.

■ Assuming, *arguendo*, that section 2600 treats similarly situated individuals differently, we believe that the section is nevertheless constitutional because the classification that it creates bears a reasonable relationship to a legitimate legislative purpose. (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 578.) The Unemployment Insurance Act was enacted to prevent the spread of unemployment and to lighten its burden. Accordingly, the Act provides for the setting aside of reserves during periods of employment to be used to pay benefits during periods of unemployment. Section 2600 furthers the purpose of the Act by providing that the purchasers of a business which is indebted to the Department shall withhold sufficient of the purchase money to cover the amount of all contributions, interest and penalties due and unpaid by the seller or shall withhold performance of some condition until the seller provides proof of payment of the contributions to the Department. In the event that the seller does not pay the contributions and the purchaser fails to withhold money or performance of a condition, the purchaser will be held liable for the contributions. Section 2600 thus insures that contributions owed the Department are paid by either the sellers or the purchasers of businesses indebted to the Department. We conclude that the classification created by section 2600 is reasonably related to the purpose of the Unemployment Insurance Act.

We next consider whether section 2600 violates the equal protection clause because it accords preferential treatment to the Department. The alleged preferential treatment is that the Department can "ignore a notice of sale and still claim unpaid assessments from a purchaser."[3] Plaintiffs assert that no other creditor, public or private, is given such treatment.

■ The functions of the Department include enforcement of the Unemployment Insurance Act with the objective of preventing the spread of unemployment and alleviating its burdens. Enforcement of the Act generates unique operational problems. The Department is required to deal with and collect contributions from countless numbers of employers. Private creditors are not faced with collection problems of such proportions. Additionally, a requirement that the Department respond to every notice of sale sent to the Department or forego unpaid contributions would put an intolerable burden on the Department

---

[3]The notice sent by plaintiffs was a notice of bulk sale pursuant to sections 6—105 and 6—106 of the Uniform Commercial Code Bulk Transfers.

in light of the fact that purchasers of businesses which are not indebted to the Department may nevertheless send notices of sale to the Department. Further, section 2600 provides a simple process by which the purchaser of a business can avoid liability for moneys owed by the seller under the Act—merely withhold payment until seller produces a receipt showing that contributions have been paid or a certificate that none are due. Lastly, we are mindful of the fact that the contributions collected by the Department are used to alleviate the burdens of unemployed individuals. These considerations lead us to conclude that the difference in treatment accorded to the Department is justified.

■■ ■ Plaintiffs also maintain that the Department is accorded different treatment from that given other taxing agencies. Classifications of governmental entities based upon their functions and activities are frequently made and are clearly proper. (*Fujimura v. Chicago Transit Authority* (1977), 67 Ill. 2d 506, 513.) Moreover, the Department is not the only agency which is accorded different treatment. Section 5j of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 444j), in pertinent part, provides:

> "The purchaser or transferee shall withhold enough of the purchase price to cover the amount of all tax, penalty and interest due and unpaid by the seller or transferor under this Act or, if the payment of money or property is not involved, shall withhold the performance of the condition that constitutes the consideration for the sale or transfer, until the seller or transferer produces a receipt from the Department showing that such tax, penalty and interest have been paid or a certificate from the Department showing that no tax, penalty or interest is due from the seller or transferor under this Act."

Section 5j nowhere requires that the Department of Revenue respond to a notice of bulk sale before it can assess taxes, penalties and interest against the purchaser of a business indebted to the Department of Revenue.[4] Thus, the Department of Revenue is accorded the same treatment as the Department of Labor.

We conclude that section 2600 of the Unemployment Insurance Act does not deny plaintiffs equal protection of the laws.

■■ ■ Plaintiffs next contend that section 2600 is unconstitutional because it allows the Department to assess contributions, interest and penalties against purchasers of businesses indebted to the Department

---

[4]Plaintiffs have cited only the Department of Revenue as an agency accorded nonpreferential treatment.

without prior notice or hearing. Plaintiffs conclude that section 2600 violates the due process clauses of the Illinois and United States constitutions. Due process, unlike some legal rules, is not a technical concept with a fixed content unrelated to time, place and circumstances. (*Mathews v. Eldridge* (1975), 424 U.S. 319, 334, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 902.) "Due process is flexible and calls for such procedural protections as the particular situation demands." (*Mathews v. Eldridge* (1975), 424 U.S. 319, 334, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 902; *Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 51, 416 N.E.2d 1082.) In the present case the Department sent plaintiffs a notice of determination and assessment which informed plaintiffs that contributions, interest and penalties owed by Metropolitan were being assessed against plaintiffs pursuant to section 2600 of the Unemployment Insurance Act. The notice further informed plaintiffs that the Department's assessment would not become final until 20 days from the date of service of the notice and that plaintiffs could file a written protest and demand a hearing from the Department pursuant to section 2200 of the Unemployment Insurance Act (Ill. Rev. Stat. 1979, ch. 48, par. 680). Plaintiffs availed themselves of the opportunity and were given a hearing. At the hearing plaintiffs were represented by counsel and were allowed to introduce testimony and exhibits into evidence. Following the hearing the Director of the Department affirmed the assessment against plaintiffs. Plaintiffs were then entitled to file a complaint for administrative review pursuant to section 2205 of the Unemployment Insurance Act (Ill. Rev. Stat. 1979, ch. 48, par. 685). This they did. We are of the opinion that the procedural protections afforded plaintiffs were such as the situation demanded.

■■ ■ Plaintiffs next urge us to apply the doctrine of estoppel to bar the Department from recovering the contributions, interest and penalties. "[W]here a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or acts to the loss or damage of the other party." (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 447, 220 N.E.2d 415, *cert. denied* (1967), 386 U.S. 934, 18 L. Ed. 2d 353, 87 S. Ct. 1302.) Our courts have been reluctant, however, to apply the doctrine of estoppel against public bodies. (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 447.) "While situations may arise which justify invoking the doctrine of estoppel even against the State when acting in its governmental capacity, [citation] [our courts] have always adhered to the rule that

mere nonaction of governmental officers is not sufficient to work an estoppel and that before the doctrine can be invoked against the State or municipality there must have been some positive acts by the officials which may have induced the action of the adverse party under circumstances where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had previously done." (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 448-49.) In the case at bar, the Department took no positive action to induce plaintiffs to consummate the sale. The Department merely failed to record a lien against the seller and failed to respond to a notice of bulk sale sent by plaintiffs pursuant to the Uniform Commercial Code. The Department was under no duty to record a lien or to respond to the notice of bulk sale. Moreover, receipt of the notice of bulk sale may have led the Department to believe that plaintiffs were aware of the seller's indebtedness to the Department.

■■ ■ Additionally, whether the principle of estoppel is sought to be applied against a public body or against a private individual, the one asserting the principle must have relied upon the actions or representations of the other and must have had no knowledge or convenient means of knowing the true facts. (*Pantle v. Industrial Com.* (1975), 61 Ill. 2d 365, 371, 335 N.E.2d 491; *Levin v. Civil Service Com.* (1972), 52 Ill. 2d 516, 524, 288 N.E.2d 97.) Section 2600 sets forth the procedure which purchasers of businesses indebted to the Department must follow to avoid liability. There was no evidence in the record that plaintiffs consulted or attempted to consult the statutes to gain this information, or that they were dissuaded from doing so. In these circumstances, application of the doctrine of estoppel is inappropriate. *Levin v. Civil Service Com.* (1972), 52 Ill. 2d 516, 525.

■■ ■ Plaintiffs also urge us to apply principles of *laches* to bar recovery of the contributions, interest and penalties. *Laches* has been defined to be "such a neglect or omission to assert a right, taken in conjunction with lapse of time *** and other circumstances causing prejudice to an adverse party, as will operate as a bar in a court of equity." (*Freymark v. Handke* (1953), 415 Ill. 360, 366, 114 N.E.2d 349; *Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, 305 N.E.2d 236.) We are of the opinion that principles of *laches* should not apply in the present case. Plaintiffs became liable for the contributions, interest and penalties on November 22, 1979, 10 days after purchase of the assets of Metropolitan. On March 24, 1980, the Department mailed to plaintiffs a notice of determination and assessment informing plaintiffs that the contributions, interest and penalties were being assessed against them. Thus, within five months of purchase

the Department asserted its claim against plaintiffs. This period of time does not justify application of principles of *laches*.

■■ Moreover, it is elementary that ordinary limitations statutes and principles of *laches* and estoppel do not apply to public bodies under usual circumstances. *Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 447.

■■ Lastly, plaintiffs contend that the Director of the Department's findings of fact are against the manifest weight of the evidence. The Director's findings of fact are as follows:

1. That plaintiffs purchased all the assets of Metropolitan;

2. Metropolitan was liable for unpaid contributions, penalties and interest to the unemployment compensation fund;

3. Plaintiffs did not withhold sufficient of the purchase money to cover the amount of all contributions, interest and penalties due and unpaid by Metropolitan, and did not obtain a receipt from the Director showing that the contributions, interest or penalties had been paid or a certificate that no contributions, interest or penalties were due.

The record amply supports the Director's findings of fact. Gus A. Pavlakos, president of G.H.P. Corp., and an individual plaintiff in this case, testified that, on behalf of G.H.P. Corp., he purchased all the assets of Metropolitan and paid the full price for the purchase of the business as indicated by the closing statement. Mr. Pavlakos further testified that neither he nor any other representative of G.H.P. Corp. ever contacted the Department to inquire whether Metropolitan owed any money for unemployment insurance contribution. Lastly, it is uncontroverted that Metropolitan was indebted to the Department for unpaid contributions, interest and penalties. We therefore conclude that the Director of the Department's findings of fact are not against the manifest weight of the evidence.

For the aforementioned reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI, P.J., and McNAMARA, J., concur.