(No. 61311.—

GUS A. PAVLAKOS *et al.*, Appellants, v. THE DEPARTMENT OF LABOR, Appellee.

*Opinion filed December 20, 1985.*

Burke & Burke, Ltd., of Chicago (John M. Burke and Molly C. Mason, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

Plaintiffs, Gus A. Pavlakos and G.H.P. Corporation, appeal from an order of the circuit court of Cook County

affirming the decision of the Director of Labor finding the plaintiffs liable under section 2600 of the Unemployment Insurance Act (Ill. Rev. Stat. 1979, ch. 48, par. 750) for unpaid contributions, interest and penalties incurred by Metropolitan Care Service, Inc. (Metropolitan). The appellate court affirmed the order of the circuit court (128 Ill. App. 3d 783), and we granted the plaintiffs' petition for leave to appeal pursuant to our Rule 317 (87 Ill. 2d R. 317).

On October 5, 1979, the plaintiffs agreed to purchase all the assets of Metropolitan, a medical personnel agency. Those assets included telephone numbers and listings, a customer list, a list of licensed medical personnel, leasehold rights, and the interest in the firm name and goodwill. As consideration for the sale, the plaintiffs agreed to pay liens filed against Metropolitan by the FDIC, the IRS, and the Illinois Department of Revenue. Pursuant to sections 6—105 and 6—106 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, pars. 6—105, 6—106), the plaintiffs sent a notice of bulk sale to Metropolitan's creditors. Although the plaintiffs were unaware of any debt to the Department of Labor (Department), a bulk-sale notice was also sent to the Department. The notice was received by the Department on October 17, 1979, but the Department did not respond to the notice. On November 12, 1979, the plaintiffs consummated the sale.

The following March, the Department notified the plaintiffs that they were obligated as purchasers of Metropolitan for unpaid contributions, interest and penalties that had accumulated over seven years. The plaintiffs filed a protest and demanded a hearing. Following the hearing, the Director of the Department affirmed the assessment against the plaintiffs; they then filed a complaint in the circuit court challenging the Department's decision.

The plaintiffs contend that section 2600 of the Unemployment Insurance Act denies them equal protection of the laws, constitutes impermissible special legislation, and violates their right to due process. Alternatively, they maintain that the equitable principles of estoppel and *laches* bar the Department from recovering the unpaid assessment.

Section 2600 provides in pertinent part:

"Any employing unit which shall, outside the usual course of its business, sell or transfer substantially all or any one of the classes of its assets \*\*\* and shall cease to own said business, shall, within 10 days after such sale or transfer, file such reports as the Director shall prescribe and pay the contributions, interest and penalties required by this Act with respect to wages for employment up to the date of said sale or transfer. The purchaser or transferee shall withhold sufficient of the purchase money to cover the amount of all contributions, interest and penalties due and unpaid by the seller or transferor or, if the payment of money is not involved, shall withhold the performance of the condition that constitutes the consideration for the transfer, *until such time as the seller shall produce a receipt from the Director showing that the contributions, interest and penalties have been paid or a certificate that no contributions, interest or penalties are due.* If the seller or transferor shall fail to pay such contributions within the 10 days specified, then the purchaser or transferee shall pay the money so withheld to the Director of Labor. If such seller or transferor shall fail to pay the aforementioned contributions, interest or penalties within the 10 days and said purchaser or transferee shall either fail to withhold such purchase money as above required or fail to pay the same to the Director immediately after the expiration of 10 days from the date of such sale as above required, or shall fail to withhold the performance of the condition that constitutes the consideration for the transfer in cases where the payment of money is not involved or is not the sole consideration, such purchaser or transferee shall be personally liable to

the Director for the payment to the Director of the contributions, interest and penalties incurred by the seller or transferor up to the amount of the reasonable value of the property acquired by him." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 48, par. 750.

The plaintiffs contend that section 2600 places an unreasonable burden on the purchaser of a business to discover the indebtedness of a seller, while relieving the seller and the Department from any obligation to notify the purchaser of any indebtedness. They argue that the statute thus imposes a greater burden on a purchaser of a business than similar statutes, such as the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1981, ch. 120, par. 440 *et seq.*), and thereby violates the equal protection clause. However, the plaintiffs' argument fails at every step.

First, section 2600 does not impose a burden on a purchaser to discover a seller's indebtedness; it merely requires a purchaser to demand documentation from the seller in the form of a receipt or a certificate from the Department showing that the seller's account is paid or that no contribution is due. Had the plaintiffs complied with the clear requirements of section 2600, they would have avoided the risk of buying an unknown obligation to the Department.

Second, under traditional equal protection analysis, a statute may treat a class of persons differently from persons who appear similarly situated if the classification bears a reasonable relationship to a legitimate legislative purpose. (*Clements v. Fashing* (1982), 457 U.S. 957, 962-63, 73 L. Ed. 2d 508, 515, 102 S. Ct. 2836, 2843; *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 578.) The plaintiffs argue that they are situated similarly to purchasers of businesses indebted to the Illinois Department of Revenue pursuant to the Retailers' Occupation Tax Act, but that the purchaser's obligation under section

2600 to discover a seller's indebtedness to the Department of Labor is unlike any obligation imposed by the Retailers' Occupation Tax Act. They claim that section 2600 therefore violates the equal protection clause.

Even if it were true that section 2600 imposes an obligation on a purchaser to "discover" a seller's indebtedness to the Department, however, the section would nevertheless be constitutional because the classification created by the section is reasonably related to the legitimate purpose of the Unemployment Insurance Act. That purpose is to provide "for the setting aside of reserves during periods of employment to be used to pay benefits during periods of unemployment ***." Ill. Rev. Stat. 1983, ch. 48, par. 300.

The State's unemployment trust fund is funded not by general revenue, but principally by contributions assessed against employers. If the amount of the trust fund is insufficient to meet the State's obligation to pay unemployment benefits or related expenses, the Governor must apply to the Federal government for additional funds, a procedure to which the State has often had to resort. The retailers' occupation tax, on the other hand, is paid into the general revenue fund, where it merges with other sources of State revenue to fund the basic operation of State government. (Ill. Rev. Stat. 1983, ch. 127, par. 143.) Unlike unemployment benefits, programs paid out of general funds may be curtailed or suspended if there is insufficient revenue to meet costs. The obviously greater capacity of the general revenue fund than of the unemployment trust fund to absorb losses is in itself sufficient warrant for the differences that the plaintiffs complain of in the procedures prescribed for collecting unpaid obligations to the two departments.

For the same reason, we reject the plaintiffs' related argument that section 2600 is unconstitutional because it accords preferential treatment to the Department of La-

bor and thus constitutes special legislation. Any special benefit conferred on the Department as a result of the procedure prescribed in section 2600 has a reasonable basis in the purpose of the Unemployment Insurance Act and the unique problems of administering the Act. Differentiation in the treatment of governmental entities based on their functions is clearly permissible (*Fujimura v. Chicago Transit Authority* (1977), 67 Ill. 2d 506, 513) where, as here, there is a reasonable basis for such differentiation.

The plaintiffs next submit that section 2600 violates the due process clause because it allows the Department to assess obligations to the Department against purchasers of businesses without prior notice or hearing. In the present case, the Department sent the plaintiffs a notice of assessment informing them that the contributions, interest, and penalties that were owed to the Department by Metropolitan would be assessed against them pursuant to section 2600. The notice stated that the assessment would not become final until 20 days from the date of service of the notice and that they could file a written protest and demand a hearing from the Department pursuant to section 2200 of the Unemployment Insurance Act (Ill. Rev. Stat. 1979, ch. 48, par. 680). The plaintiffs did demand and were given a hearing at which they were represented by counsel, who introduced testimony and exhibits into evidence. Following the hearing, as pointed out above, the plaintiffs filed a complaint for administrative review under section 2205 of the Unemployment Insurance Act (Ill. Rev. Stat. 1979, ch. 48, par. 685). Thus, the constitutional requirement that notice and an opportunity to be heard before an owner is deprived of a property right was satisfied and the plaintiffs were not deprived of due process.

Finally, the plaintiffs argue that the equitable doctrines of estoppel and *laches* should be applied to bar the

Department from collecting the amount assessed against them. However, the doctrine of estoppel applies against the State only when some positive acts by State officials may have induced an action by the adverse party under circumstances where it would be inequitable to hold the adverse party liable for the act so induced; mere inaction by the State is not sufficient to invoke estoppel. (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 447-49, *cert. denied* (1967), 386 U.S. 1000, 18 L. Ed. 2d 353, 87 S. Ct. 1302.) In the present case, the Department took no action to induce plaintiffs to consummate the sale. Rather, the plaintiffs complain that the Department failed to record a lien against the seller and to respond to the notice of bulk sale sent by the plaintiffs. However, the Department had no duty to record a lien or to respond to the plaintiffs' notice. On the other hand, section 2600 prescribes the procedure which, if followed, would have provided the plaintiffs with full information concerning Metropolitan's obligation to the Department prior to consummation of the sale. In these circumstances, estoppel is not an appropriate contention.

Similarly, the doctrine of *laches* is not ordinarily applied to the State. (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 447.) Plaintiffs became liable for the contributions, interest, and penalties accumulated against Metropolitan on November 22, 1979, 10 days after the purchase of Metropolitan's assets. On March 24, 1980, the Department mailed the notice of assessment to the plaintiffs. Thus, the Department asserted its claim against the plaintiffs just over four months from the time their liability attached. These circumstances do not justify the application of the doctrine of *laches* even if it were an available position against the State.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Judgment affirmed.*