237 N.J. Super. 310 (1989)
567 A.2d 1013
NEW JERSEY EDUCATIONAL FACILITIES AUTHORITY AND JERSEY CITY STATE COLLEGE, PLAINTIFFS-APPELLANTS,
v.
THE CONDITIONING COMPANY AND THE NORTH RIVER INSURANCE COMPANY, DEFENDANTS, AND CERAMI CONSTRUCTION COMPANY AND TRAVELERS INDEMNITY COMPANY, DEFENDANTS-RESPONDENTS. and THE GRUZEN PARTNERSHIP, DEFENDANT AND THIRD-PARTY PLAINTIFF-RESPONDENT,
v.
TUREK ASSOCIATES, THIRD-PARTY DEFENDANT AND FOURTH-PARTY PLAINTIFF,
v.
DIVISION OF BUILDING AND CONSTRUCTION, FOURTH-PARTY DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1989.
Decided December 13, 1989.
*311 Before Judges MICHELS, R.S. COHEN and BROCHIN.
Robert W. Delventhal argued the cause for appellants New Jersey Educational Facilities Authority and Jersey City State College (Crummy, Del Deo, Dolan, Griffinger & Vecchione, attorneys; Robert W. Delventhal, Paul F. Campano, and Phyllis Lieberman, on the brief).
Carmine D. Campanile argued the cause for respondents Cerami Construction Company and Travelers Indemnity Company (Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg, attorneys; Carmine D. Campanile, on the brief).
*312 Richard M. Mandel argued the cause for respondent The Gruzen Partnership (O'Brien, Liotta & Mandel, attorneys; Richard M. Mandel and David M. Kupfer, on the brief).
Valerie L. Egar, Deputy Attorney General, argued the cause for amicus curiae State of New Jersey (Peter N. Perretti, Jr., Attorney General of New Jersey; Michael R. Clancy, Deputy Attorney General, of counsel; Valerie L. Egar, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiffs New Jersey Educational Facilities Authority (Authority) and Jersey City State College (College) appeal from a summary judgment of the Law Division entered in favor of defendants The Gruzen Partnership (Gruzen), Cerami Construction Company (Cerami) and Travelers Indemnity Company (Travelers) in this action for damages arising out of the design and construction of the Student Union Building at the College. The trial court held that although the doctrine of nullum tempus occurrit regi (i.e., time does not run against the king) (nullum tempus) insulates the State and its agencies from the statute of limitations with regard to governmental functions, it provided no protection here, as plaintiffs' claim was based on a proprietary function. Plaintiffs contend that the doctrine of nullum tempus applies to protect the State and its agencies regardless of whether the claim concerns a governmental or proprietary function. We agree and reverse.
In August 1969, Gruzen entered into a contract with the State Division of Building and Construction (Division) to supervise the design and construction of a Student Union Building on the campus of the College in Jersey City, New Jersey. In October 1973, a contract to construct the building was awarded to Cerami. Cerami, which began work on the project shortly after the contract was signed, obtained a construction bond from Travelers to secure its performance. In November 1973, after work had commenced, the Division assigned its interest in *313 the contract to the Authority. Construction proceeded during the next several years and the building was substantially completed by February 1976.
The contract provided, among other things, that Gruzen was to make periodic visits to the campus during construction to determine whether the work was proceeding in accordance with the contract and to guard the owner against defects and deficiencies. In addition, it was also Gruzen's responsibility to determine the amount due Cerami and to issue certificates of payment. These certificates, pursuant to the agreement between the parties, constituted representations that the work had progressed to the point indicated and that the quality of the work was in accordance with the contract.
In June 1976, the first of a series of leaks in the structure was discovered. No one at that time knew the cause or extent of the leaks but everyone involved agreed to work together to determine the cause and to charge the appropriate party. Gruzen was later directed by the Division to determine the cause of the problems and make recommendations for corrective measures. Shortly thereafter, Cerami informed Gruzen that many of the leaks which had been reported had, in fact, been repaired. On June 15, 1976, Gruzen reported this to the Division. In July 1976, the College was informed by an expert hired by Cerami that the leaks, which had not yet been repaired, would be corrected with caulking and both the expert and Cerami stated that the leaks were due to condensation and various other causes.
In October 1976, Cerami represented that one of its subcontractors had inspected the roof and found no leaks and that the roof was watertight. In November 1976, another leak was observed. In response, Cerami again stated that the building had been inspected and that no leaks were observed, except for one which would be repaired.
Through early 1977, sporadic leaks and subsequent investigations continued, including numerous on-site investigations and *314 meetings among the parties, but no determination was made as to either the cause or responsibility for any water leaks. The Division believed that a complete investigation was necessary, and in April 1977, the Division so advised Cerami. By July 1977, the Division had received a report from Cerami that the roof was deliberately flooded to test for leaks and that no leaks were noticed. Cerami further reported that two minor leaks were noticed and that those leaks would be repaired.
Even though some sporadic leaking continued through February 1978, the Division was pleased with Cerami's position on the roofing problems. In fact, the Division was of the view that the roof had been installed in accordance with the contract since Gruzen had found no reason to change the specifications or require additional work. The Division's conclusions were based on the various representations made by Gruzen and Cerami. However, in May 1978, because a leak suddenly reappeared, the Division questioned whether water entered the building through the air intake system.
In March 1979, Gruzen was given a last opportunity to determine the source of any leaks. By May 1979, the cause of the leak had still not been determined. In fact, Gruzen reported that the task was extremely difficult and that further exploratory measures had to be taken. As late as July 1979, Cerami was still representing that it would repair any leaks that were present. In September 1979, after a roof analysis had been performed by an outside firm showing wet insulation, the Division determined, for the first time, that Cerami may have been responsible for the roof problems. In late August 1982, the College had a thermographic study of the roof performed by an independent firm, which revealed for the first time that the entire roof needed to be replaced and that minor spot repairs would not solve the problem.
In January 1983, the State Architect, after an inspection, advised the Attorney General to institute suit. On March 10, 1983, the Authority instituted this action against Gruzen, Cerami *315 and Travelers, among other defendants, alleging that the excessive leaking was caused by inadequate flashing and claiming that Cerami had not constructed the building in accordance with the plans and specifications. The Authority also claimed that Cerami fraudulently concealed the incomplete flashing. In addition, the Authority charged that it had made a demand upon Travelers for payment of the damages under its performance bond, but Travelers failed to respond. Finally, the Authority claimed that Gruzen breached its contract and was negligent in that it failed: (1) to ascertain that Cerami was performing the construction in an improper manner; (2) to advise the Division that the work performed did not conform to the plans and specifications, and (3) to properly design and prepare plans and specifications. Gruzen, Cerami and Travelers, each denied that they were under any liability to plaintiffs and in their respective answers, claimed, by way of separate defense, that the action was barred by the six year statute of limitations, N.J.S.A. 2A:14-1.
On January 9, 1985, the Authority was granted leave to join the College as a party plaintiff. On January 22, 1985 an amended complaint was filed, alleging that the College was the actual user and beneficiary of the building and repeating the allegations of the original complaint.
Thereafter, defendants moved for summary judgment on the ground that plaintiffs' claims were barred by the six year statute of limitations. The trial court granted the motions and dismissed the action with regard to all claims, except those relating to the brick area, holding that the claims were barred by the six year statute of limitations, N.J.S.A. 2A:14-1. Plaintiffs moved for reconsideration on the ground that the six year statute of limitations was inapplicable to them because of their status as public entities. Plaintiffs argued that, as State agencies, they were entitled to the general protection afforded the State from statutes of limitation under the doctrine of nullum tempus. The trial court found that plaintiffs were State agencies and, therefore, entitled to whatever the State is entitled to *316 with regard to the doctrine of nullum tempus. However, the trial court held that the doctrine applies only when the State acts in its public capacity, and that because plaintiffs were acting in a proprietary capacity the doctrine did not apply to bar application of the statute of limitations. This appeal followed.
The doctrine of nullum tempus is of ancient origin. Originally established in England, the doctrine was incorporated into American law after the colonial period. 51 Am.Jur.2d Limitation of Actions § 409 (1970). The doctrine was developed because
[t]he common law fixed no time as to the bringing of actions. Limitations derive their authority from statutes. The King was held never to be included, unless expressly named. No laches was imputable to him. These exemptions were founded upon considerations of public policy. It was deemed important that, while the sovereign was engrossed by the cares and duties of his office, the public should not suffer by the negligence of his servants. "In a representative government, where the people do not and cannot act in a body, where their power is delegated to others, and must of necessity be exercised by them, if exercised at all, the reason for applying these principles is equally cogent." [United States v. Thompson, 98 U.S. 486, 489, 25 L.Ed. 194, 195 (1879).]
Simply stated, the doctrine of nullum tempus provides that "the statute of limitations does not run against the Sovereign...." 51 Am.Jur.2d Limitation of Actions, supra, at § 409. In other words, there is no time limit on the State's ability to sue and assert its rights. A majority of American jurisdictions follow the doctrine in its traditional version. See, e.g., Oklahoma City Mun. Imp. Auth. v. HTB, Inc., 769 P.2d 131, 134 (Okl. 1988) (holding "the general rule [is] that statutes of limitation shall not bar suit by any government entity acting in its sovereign capacity to vindicate public rights, and that public policy requires that every reasonable presumption favor government immunity from such limitation."); City of Medford v. Budge-McHugh Supply, 91 Or. App. 213, 219, 754 P.2d 607, 610 (Or. Ct. App. 1988) (holding "[t]he common law rule that statutes of limitations do not apply against governmental bodies ... is still in force."); Cajun Cable Co. v. Industrial Comm'n of Ariz., 156 Ariz. 590, 754 P.2d 317, 322 (Ariz. Ct. App. 1987) (holding "[s]tatutes of limitations do not apply *317 against the state when it acts in its character of a sovereign, in the absence of a statute specifically allowing such a defense."); Anderson County Bd. of Educ. v. National Gypsum Co., 821 F.2d 1230, 1232 (6th Cir.1987) (holding "[t]he common law rule, enacted into positive law in Tenn. Code Ann. § 28-1-113 (1980), is that the statute of limitations does not operate to bar suits brought by the sovereign."); Bellevue School Dist. 405 v. Brazier Constr. Co., 103 Wash.2d 111, 691 P.2d 178, 181 (Wash. 1984) (holding "[t]he State, acting in its sovereign capacity, is immune from the application of limitation periods to actions brought for the benefit of the State."); Pavlakos v. Illinois Dep't of Labor, 128 Ill. App.3d 783, 84 Ill.Dec. 18, 471 N.E.2d 547, 553 (Ill. App.Ct. 1984), aff'd, 111 Ill.2d 257, 95 Ill. Dec. 461, 489 N.E.2d 1325 (Ill. 1985) (holding "it is elementary that ordinary limitations statutes and principles of laches and estoppel do not apply to public bodies under usual circumstances.").
Likewise, it is settled in New Jersey that statutes of limitation do not run against any civil action brought by the State or any of its agencies and subdivisions, unless the Legislature so allows by express language or necessary implication. State v. United States Steel Corp., 22 N.J. 341, 352 (1956); Port Authority of N.Y. and N.J. v. Bosco, 193 N.J. Super. 696, 699 (App.Div. 1984); Veterans Loan Auth. v. Wilk, 61 N.J. Super. 65, 70-71 (App.Div. 1960); State v. American-Hawaiian S.S. Co., 29 N.J. Super. 116, 138 (Ch.Div. 1953). Specifically, the six-year statute of limitations in N.J.S.A. 2A:14-1 does not apply to the State or any of its agencies and subdivisions. Port Authority of N.Y. and N.J. v. Bosco, supra, 193 N.J. Super. at 698-699.
The pivotal issue here is whether the doctrine of nullum tempus is applicable to the Authority and the College. We are aware that there is authority holding that the doctrine of nullum tempus only applies where the State and its subdivisions act in a governmental capacity and does not apply where *318 a proprietary function is undertaken. See Bergen Community College Trustees v. J.P. Fyfe, Inc., 188 N.J. Super. 288, 293 (Law Div. 1982), aff'd, 192 N.J. Super. 433 (App.Div. 1983), certif. den., 96 N.J. 308 (1984); 54 C.J.S. Limitations of Actions § 17 (1987). Here, however, it is clear that the Authority and the College were engaged in a governmental function, namely, the construction of a state public higher education facility. Obviously, such a project involves the public interest for which the State and its agencies are primarily responsible.
We are likewise aware that the jurisdictions are divided as to whether state agencies are entitled to the same protection against statutes of limitation which is afforded the State itself. Even in those jurisdictions, which follow the traditional common law version of nullum tempus, not all government agencies are clothed with the same protection. See, e.g., Burns v. Board of Supervisors of Stafford County, 227 Va. 354, 315 S.E.2d 856 (Va. 1984) (holding that governing body of sanitary district not entitled to benefit of statutory version of nullum tempus); Anderson County Bd. of Educ. v. National Gypsum Co., supra, 821 F.2d at 1234 (holding that county board of education did not enjoy the State's immunity from the statute of limitations). We are convinced, however, that the Authority and the College are entitled to the same protection against statutes of limitation which is afforded to the State itself, and, therefore, hold that their respective claims in this case are not time barred.
The Authority was created in 1969 pursuant to N.J.S.A. 18A:72A-1 to N.J.S.A. 18A:72A-39 to "enable institutions of higher education in the state to provide the facilities which are sorely needed" to promote academic excellence. N.J.S.A. 18A:72A-1. It is not merely an advisory or administrative body. Rather, it is a "political subdivision of the state established as an instrumentality exercising public and essential governmental functions, and the exercise ... of [its] powers [is] deemed and held to be an essential governmental function of *319 the state." N.J.S.A. 18A:72A-4. In State v. Scientific Coating Co., 228 N.J. Super. 320, 323 (App.Div. 1988), we construed the statute and held that the Authority "is unquestionably entitled to the status of a state authority...." Scientific Coating concerned whether the Authority could assert a claim against a contractor seven years after the work was substantially completed. In ruling that the claim was not time barred, we noted that
as an arm of state government, the Educational Facilities Authority is entitled to assert the doctrine of nullum tempus. As stated in Trustees, etc., Public Schools [v. Ott & Brewer Co.], 135 N.J. Eq. [174] at 177, the doctrine of nullum tempus stands for the proposition that "a statute of limitation should not be construed to encircle the government unless it is manifest from the mischief to be reached, the express language employed or by necessary implication therefrom, that the government was in the contemplation of the legislature." We reaffirm that a statute of limitations is not applicable to the government unless included by express language or necessary implication. Veterans Loan Authority v. Wilk, 61 N.J. Super. 65, 70 (App.Div. 1960). The Supreme Court has stated, "[o]rdinarily the federal and state governments are immune from the operation of general statutes of limitations.... [h]owever, there would seem to be nothing to prevent the federal and state governments from forthrightly providing that claims by them or their governmental divisions shall be barred if not pursued within a stated period of time." Eureka Printing Co. v. Div., etc., Dept. of Labor and Industry, 21 N.J. 383, 387-388 (1956). See also State v. American-Hawaiian Steamship Co., 29 N.J. Super. 116, 138 (Ch.Div. 1953); Hyland v. Kirkman, 157 N.J. Super. 565, 581 (Ch.Div. 1978); Environmental Protect. Dep't v. Ventron Corp., 182 N.J. Super. 210, 226 (App.Div. 1981), aff'd as mod., 94 N.J. 473 (1983). [State v. Scientific Coating Co., supra, 228 N.J. Super. at 324.]
Clearly, the Authority is an instrumental part of state government and, as such, is entitled to the benefit of the nullum tempus doctrine.
The College was established by the State in 1929. T. Fitzerald, New Jersey Legislative Manual 110 (1989). In 1935, it became known as New Jersey State Teachers College at Jersey City. It was designated as Jersey City State College in 1958 and was "authorized to grant bachelor of arts degrees to students who completed the teacher education program." The College began to grant bachelors degrees in the liberal arts in 1965. As with other state institutions of higher education, the College is largely self-governing. N.J.S.A. 18A:64-1. The *320 board of trustees of the College is "subject to the general policies, guidelines, and procedures set by the Board of Higher Education." N.J.S.A. 18A:64-6. Among other things, the trustees of the College are authorized to take and condemn land; adopt and use a corporate seal; annually report to the Governor and Legislature on the condition of the school, and disburse all moneys appropriated to the College by the Legislature. N.J.S.A. 18A:64-6.
The granting of such broad governmental powers demonstrates that our Legislature intended state colleges to be "arm[s] of state government", State v. Scientific Coating Co., supra, 228 N.J. Super. at 324, and not merely administrative or bureaucratic subdivisions. As part of state government, state colleges exercise essential government powers and perform basic government functions. See Fair Lawn Educ. Ass'n v. Fair Lawn Bd. of Educ., 79 N.J. 574, 579 (1979) (holding "[l]ocal boards of education are creations of the State and, as such, may exercise only those powers granted to them by the Legislature  either expressly or by necessary or fair implication."); Rutgers v. Piluso, 60 N.J. 142, 153 (1972) (holding that state colleges are "instrumentalit[ies] of the state performing an essential governmental function for the benefit of all the people of the state...."). Cf. In re Executive Comm'n on Ethical Standards, 116 N.J. 216, 224 (1989) (holding that as the State University, Rutgers holds a unique position for in certain instances it is a state agency while, in others, it is not.). In U.M.D.N.J. v. American Ass'n of Univ. Professors, 223 N.J. Super. 323, 331 (App.Div. 1988), aff'd, 115 N.J. 29 (1989), we clearly held that "[p]ublic institutions of higher education are creatures of the State...." In light of the foregoing, it is clear that the College, as with other state run institutions of higher learning, is an integral part of government, exercising fundamental government functions.
As integral parts of state government, the Authority and the College are entitled to the protection afforded the State itself by the doctrine of nullum tempus. To hold otherwise would *321 be to subvert the policy foundations underlying statutes of limitation and would work an injustice to the public good. As such, the Authority's and the College's claims against defendants arising from the defective roof are not time barred. In other words, Gruzen, Cerami and Travelers cannot use the statute of limitation as a defense to this action.
Bergen Community College Trustees v. J.P. Fyfe, Inc., supra, relied upon by the trial court is clearly distinguishable and does not support a contrary result. In Bergen Community College, the plaintiff Community College instituted suit in contract and tort for alleged defects in materials supplied and in the performance of a roofing subcontract. The defendants raised the statute of limitation as a bar to the action and the Community College responded by seeking protection under the nullum tempus doctrine. On appeal, we held that the Community College was not exempt from the bar of the statute of limitations, reasoning that although the Community College is a political subdivision of the county, it serves a separate purpose and operates apart from county government. In Scientific Coating, however, we held that Bergen Community College was "limited to the proposition that a county college is not the kind of body which enjoys the appurtenances of sovereignty, and thus may not invoke the doctrine of nullum tempus." State v. Scientific Coating Co., supra, 228 N.J. Super. at 323. (Emphasis added). In contrast to a county college, the Authority and the College are integral parts of state government. As such, they enjoy and are entitled to the same protection afforded the State under the nullum tempus doctrine.
Accordingly, the summary judgment granted in Gruzen's, Cerami's and Travelers' favor is reversed and the case is remanded to the Law Division for further proceedings.