592 A.2d 559

NEW JERSEY EDUCATIONAL FACILITIES AUTHORITY AND JERSEY CITY STATE COLLEGE, PLAINTIFFS–RESPONDENTS, v. THE GRUZEN PARTNERSHIP, CERAMI CONSTRUCTION COMPANY, AND TRAVELERS INDEMNITY COMPANY, DEFENDANTS–APPELLANTS, AND THE CONDITIONING COMPANY AND THE NORTH RIVER INSURANCE COMPANY, DEFENDANTS.

Argued October 23, 1990—Decided July 22, 1991.

*Carmine D. Campanile* argued the cause for appellants Cerami Construction Company and Travelers Indemnity Company (*Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg,* attorneys).

*Richard M. Mandel* argued the cause for appellant The Gruzen Partnership (*O'Brien, Liotta & Mandel,* attorneys; *Richard M. Mandel* and *David M. Kupfer,* on the briefs).

*Robert W. Delventhal* argued the cause for respondents (*Crummy, Del Deo, Dolan, Griffinger & Vecchione,* attorneys; *Robert W. Delventhal* and *Michael R. McDonald,* on the brief).

*Valerie L. Egar,* Deputy Attorney General, argued the cause for *amicus curiae* State of New Jersey (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Michael R. Clancy,* Assistant Attorney General, of counsel).

*Roger P. Sauer* submitted a brief on behalf of *amicus curiae* American Insurance Association (*Sauer, McCloskey & Del Mauro,* attorneys; *Roger P. Sauer* and *Bruce C. Truesdale,* on the brief).

The opinion of the Court was delivered by

O'HERN, J.

This appeal concerns the doctrine of *"nullum tempus occurrit regi"* (no time runs against the king). The question here is whether a general statute of limitations runs against today's sovereign, the State (or one of its agencies), when it asserts a claim in contract. We agree with the Appellate Division that no difference in principle can be found to warrant departure from the general rule in the context of a suit brought by the New Jersey Educational Facilities Authority (NJEFA) and Jersey City State College (JCSC) seeking to redress defective design and construction of a student-center building. The activities performed by NJEFA and JCSC were governmental in nature

and the two agencies are sufficiently identified with the State to warrant application of the doctrine.

However, we believe that despite its different evolution, the doctrine of *nullum tempus* is but an aspect of sovereign immunity. This Court has previously determined that the doctrine of sovereign or governmental immunity, in the areas of the State's tort and contract liability, does not accord with notions of fundamental justice applicable to our elected representative form of government. *Willis v. Department of Conservation and Economic Dev.*, 55 *N.J.* 534, 264 *A.*2d 34 (1970); *P T & L Constr. Co. v. Commissioner, Dep't of Transp.*, 55 *N.J.* 341, 262 *A.*2d 195 (1970). Because its abolition represented such a clean break with the past, the Court decided that the doctrine would be abolished prospectively, leaving the Legislature ample opportunity to step into the field. The Legislature responded by enacting the Tort Claims Act, *N.J.S.A.* 59:1–1 to :12–3, and the Contractual Liability Act, *N.J.S.A.* 59:13–1 to –10.

Having yielded the greatest aspect of sovereign immunity, immunity from any suit at all, it would be anomalous in the extreme not to conclude that the sovereign who can now be sued should not have to bring its own suit in a timely manner.

Hence, consistent with *Willis* and *P T & L Construction Co.*, we abrogate the immunity doctrine of *nullum tempus* insofar as it applies to immunity of the State or its agencies from the application of statutes of limitations in contractual matters. To avoid disruptions of governmental fiscal affairs currently positioned on the continued existence of the doctrine, we make our decision effective December 31, 1991. We commend the matter to the consideration of the Legislature for any modification of this disposition in light of the special needs of governmental agencies.

I

We need not engage in an extended discussion of the merits of the application of the common-law doctrine of *nullum tem-*

*pus* to the circumstances of this case. The facts and legal principles of decision are well set forth in the reported opinion of the Appellate Division. *New Jersey Educ. Facilities Auth. v. Conditioning Co.*, 237 *N.J.Super.* 310, 567 *A.*2d 1013 (1989). We granted certification, 121 *N.J.* 629, 583 *A.*2d 325 (1990), because of the broader significance of whether the doctrine should have continued existence.

Assuming the validity of *nullum tempus*, we are fully in accord with the Appellate Division's conclusions on the application of the doctrine to the circumstances of this case. The pivotal issue, of course, is whether the doctrine of *nullum tempus* applies to NJEFA and to JCSC. The question arises in the context of a multi-million dollar construction contract to build a student center for JCSC at its campus in Hudson County, New Jersey. NJEFA financed the project and arranged for the construction of the facility through the Division of Building and Construction (DBC) of the State's Treasury Department. The DBC engaged the Gruzen Partnership as the architects for the project and the Cerami Construction Company as the general contractor. The building was defective in several respects and NJEFA, later joined by JCSC, brought this suit for damages.

The sub-questions for decision are whether the subordinate State agencies involved were acting in a governmental rather than a proprietary capacity and whether those agencies were entitled to the same protection as the State itself would be. *See New Jersey Higher Educ. Assistance Auth. v. Carlock*, 247 *N.J.Super.* 471, 589 *A.*2d 671 (Law Div.1991) (when the State's contractual claim is from its inception inherently public in nature rather than simply a private claim received by assignment, *nullum tempus* applies). This first question arises from a distinction that courts have long made in curtailing the doctrine of sovereign immunity. *See Trenton & Mercer Cty. Traction Corp. v. Township of Ewing*, 87 *N.J.Eq.* 397, 101 *A.* 1037 (Ch.1917), *rev'd on other grounds*, 90 *N.J.Eq.* 560, 107 *A.* 416 (E. & A.1919); *Board of Trustees v. J.P. Fyfe, Inc.*, 188

*N.J.Super.* 288, 294–95, 457 *A.*2d 83 (Law Div.1982), *aff'd,* 192 *N.J.Super.* 433, 471 *A.*2d 38 (App.Div.1983), *certif. denied,* 96 *N.J.* 308, 475 *A.*2d 598 (1984). The second question arises from a different but related perspective of asking whether the sovereign has chosen to create subordinate State agencies or subdivisions sufficiently independent of the sovereign to need none of its protections.

On the first point, the Appellate Division concluded, and we agree, that the function involved is governmental. 237 *N.J.Super.* at 318, 567 *A.*2d 1013. NJEFA, as well as JCSC, is a vehicle to carry out the governmental function of educating the State's citizens. The special purpose of NJEFA is to provide that "future generations of youth be given the fullest opportunity to learn and to develop their intellectual and mental capacities." *N.J.S.A.* 18A:72A–1. In the context of higher education, that surely includes the provision for the students of suitable facilities, which are "sorely needed" to accomplish those goals. *Ibid.*

The history of the agency and its ability to engage in those activities, even in the case of private institutions, is well set forth in *Clayton v. Kervick,* 52 *N.J.* 138, 244 *A.*2d 281 (1968). The way the system works is that NJEFA floats its own notes, bonds, or obligations as an agency of State government·to finance the construction of needed additions to capital plans of State colleges and universities, both public and private. *Id.* at 141, 244 *A.*2d 281. Although such obligations have sufficient independent status that borrowing may be conducted without submitting the question for general voter approval, as would be the case for general State obligations, *see N.J.Const.* art. VIII, § 2, para. 3, the obligations are considered to be in furtherance of a proper public purpose of the State, namely, to further higher education. Once it acquires the necessary funds, NJEFA then engages contractors to erect the facilities. Like other State agencies, it may employ the contracting arm of the State, the DBC. When the project is completed, the facilities are, in

effect, leased to the educational institution, which repays to NJEFA, in the form of rent, all of the expenses incurred in carrying the project forward. *Clayton v. Kervick, supra,* 52 *N.J.* at 141–42, 244 *A.*2d 281.

As to the second question, whether *nullum tempus* should be applied only to the State itself and not to these agencies, we see no reason for that limitation in the circumstances of this case. In its origin, NJEFA was deemed to be a "political subdivision of the state established as an instrumentality exercising public and essential governmental functions." *N.J.S.A.* 18A:72A–4(a). In its operation, NJEFA functions as "an arm of state government * * * entitled to assert the doctrine of *nullum tempus." State v. Scientific Coating Co.,* 228 *N.J.Super.* 320, 324, 549 *A.*2d 874 (App.Div.1988). As noted above, the primary purpose of NJEFA is to assist the State in meeting the educational needs of the State's citizens. In fulfilling that purpose, NJEFA works extensively with other State agencies, such as the DBC. NJEFA is so closely identified with the State that its operations should be considered to be embraced by the doctrine of *nullum tempus.*

In its enabling legislation, NJEFA was given the power "[t]o sue and be sued." *N.J.S.A.* 18A:72A–5(d). Interpreting the enabling statutes of other State agencies, some courts have found that the presence of similar language indicated a legislative intent to waive common-law immunities for those agencies. *See, e.g., Frank Briscoe Co. v. Rutgers,* 130 *N.J.Super.* 493, 327 *A.*2d 687 (Law Div.1974) (sovereign immunity did not shield Rutgers from contract suit); *Borough of Sayreville v. New Jersey Highway Auth.,* 67 *N.J.Super.* 271, 170 *A.*2d 523 (Law Div.1961) ("to sue and be sued" language in Highway Authority's enabling statute constituted waiver of sovereign immunity). However, the presence of the "to sue and be sued" language in the enabling statute is not dispositive; rather, it is but one of the factors to be considered in determining legislative intent. After reviewing the relevant characteristics of the New Jersey

Turnpike Authority, including the presence of the "to sue and be sued" language in its enabling statute, the Court in *McCabe v. New Jersey Turnpike Authority*, 35 *N.J.* 26, 170 *A.*2d 810 (1961), found that "[w]hile none of these factors when considered alone points to a rejection of immunity, when taken together they compel the conclusion that the Legislature intended to create an independent body which would be responsible for negligently inflicted wrongs." *Id.* at 34, 170 *A.*2d 810. In this case, we must decide whether the presence of the "to sue and be sued" language in the enabling statute of NJEFA evidences a legislative intent to waive the immunity doctrine of *nullum tempus*. When analyzing the enabling statute of an entity, "it may be said to be a fundamental rule of construction that what is not clearly granted by the state is withheld and that statutes permitting suits against the state, being in derogation of sovereignty, must be strictly construed." *Strobel Steel Constr. Co. v. State Highway Comm'n*, 120 *N.J.L.* 298, 302, 198 *A.* 774 (E. & A.1938). Although the Legislature granted NJEFA the power to sue and be sued, it made no reference to a waiver of *nullum tempus*. Similarly, when the Legislature amended the Port Authority statute to make the Authority amenable to suit, it did not specifically waive *nullum tempus*. *See N.J.S.A.* 32:1–157. Finding "no merit to defendants' contention that because the Legislature abrogated this particular attribute of sovereignty * * * the status of the Port Authority as a state agency was thereby withdrawn in all other respects," the court in *Port Authority v. Bosco*, 193 *N.J.Super.* 696, 700, 475 *A.*2d 676 (App.Div.1984), held that *nullum tempus* still applied to the Port Authority. Here, taking into consideration all of the relevant factors, we find that *nullum tempus* does apply to NJEFA as a State agency.

In addition, we see no reason why JCSC should not be considered a State agency for this purpose. We recognize that a State university is not considered the State for all purposes. In *Fuchilla v. Layman*, 109 *N.J.* 319, 537 *A.*2d 652, *cert. denied*, 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L.Ed.*2d 51 (1988), we

concluded that a sufficient distinction existed between the State and a State university so that a private suit for discrimination under federal law could be brought against the university without offending eleventh-amendment principles. And in *In re Determination of Executive Commission on Ethical Standards*, 116 *N.J.* 216, 561 *A.*2d 542 (1989), we concluded that teachers at a State university would not necessarily be considered State employees for purposes of a conflict-of-interest law. In contrast, in the context of immunity from local land-use regulations, *Rutgers v. Piluso*, 60 *N.J.* 142, 286 *A.*2d 697 (1972), and immunity from property taxation, *Rutgers v. Piscataway Township*, 1 *N.J.Tax* 164 (1980), a State university has been regarded as a State agency. In deciding such cases, we reflect on the fundamental purposes of the relevant laws or doctrines and the reasons we believe would best accord with the measure of independence the Legislature would intend to give to the State-university system. Consideration of that independence is especially important in light of the first-amendment concern for academic freedom. But surely in this case, creating the building blocks of education, the bricks and mortar of education, does not raise the concern for the needed educational independence that warrants distinct treatment from the State. In short, we are satisfied that there is sufficient identification of NJEFA and JCSC with the State for purposes of the doctrine of *nullum tempus* to conclude that it should be applied.

## II

■ On the more fundamental question of the continued existence of the doctrine, we agree with the reasons for its demise that are cogently stated in defendant Gruzen's brief to the Appellate Division. The doctrine of *nullum tempus* is not found in any statute, "nor does it spring from any constitutional provision." It is strictly a creature of the common law. *Nullum tempus* originated "as one of the royal prerogatives, justified on the ground that the king was too busy looking after the welfare of his subjects to sue." *Developments in the*

*Law—Statutes of Limitations,* 63 *Harv.L.Rev.* 1177, 1251 (1950). But our courts have recognized that although the doctrine "had an identity of its own," it is "related to the doctrine of sovereign immunity which exempts an entity from suit. As a matter of logic it would seem that an entity which is not protected from suit by sovereign immunity would also not be entitled to benefit from *nullum tempus.*" *Board of Trustees v. J.P. Fyfe, Inc., supra,* 188 *N.J.Super.* at 293, 457 *A.*2d 83. Defendant Gruzen correctly identifies the doctrine as one of the "legal relics" that should be included among the numerous other immunities that have been abrogated or curtailed by the Court. *See Merenoff v. Merenoff,* 76 *N.J.* 535, 547–48, 388 *A.*2d 951 (1978) (reviewing abrogated immunities).

The policy argument that is advanced in support of the continued existence of the doctrine is that society must be protected from the inefficiencies of its public servants. Thus, if a statute of limitations has run on a valid State claim, the public should not have to suffer by reason of the neglect of a governmental employee. However, that argument would serve as well to reinstate the doctrine of governmental immunity from all claims. If the State has immunity when its employee forgets a deadline for the filing of a claim, then why should the State not have immunity when its employee forgets to engage the emergency brake of a truck, allowing the truck to drive into another's living room? After all, the public in both instances pays the price for the employee's neglect. In the context of tort law, we decided that the common law should no longer refuse the citizen a remedy, leaving the Legislature to decide the dimensions of the right. *Willis, supra,* 55 *N.J.* 534, 264 *A.*2d 34. So too here, the common law should no longer deny the citizen the protection of general law. Thus, consistent with the logical and historical experience of the abolition of contractual immunity and the legislative enactment of the Contractual Liability Act, we recognize that the State itself should prosecute its contract claims in accordance with existing statutes of limitations.

But we must make this ruling prospective. Whatever may be the weaknesses of the doctrine, it has apparently never been abrogated by judicial decision in this State. Defendant Gruzen argues that the State did not in any sense rely on the doctrine, pointing out that the Director of the DBC wrote to an Assistant Attorney General suggesting that a complaint "should be filed now to beat the statute of limitations." Yet that does not detract from the fact that retroactive abolition of *nullum tempus* would constitute a clean break with the past and would expose the government to unanticipated loss of claims in cases yet to be subjected to the specific factual record that this case has. In *Devins v. Borough of Bogota,* 124 *N.J.* 570, 592 *A.*2d 199 (1991), we applied our ruling to the plaintiffs and made it prospective to all others. But that reflects the special nature of such claims of land title. In the case of adverse possession of land, the limitation period serves as well to confirm the rightness of the underlying claim as it does to avoid suits. 3 *American Law of Property* § 15.2 (1952). That same sense of the rightness of the claim of one in possession of land for twenty or thirty years does not extend to the underlying controversy here.

Hence, we believe that the fairest course to all is to adhere to the principles of decision that this Court established in *Willis* and *P T & L Construction Co.* The doctrine of *nullum tempus* is abrogated with respect to the State or its agencies insofar as it would preclude the application of general statutes of limitations to the State. This decision shall not be effective or applicable to claims made by the State or its agencies prior to December 31, 1991. As for all claims made thereafter, the doctrine of *nullum tempus* shall not serve to excuse the State from compliance with statutes of limitations on such contractual claims, except to the extent otherwise provided by statute. In all other respects, the judgment of the Appellate Division is affirmed. Our ruling is subject in all aspects to any action of the Legislature.

*For affirmance in part and reversal in part*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.